## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAPE COD CHARTER BOAT ASSOCIATION
P.O. Box 195
South Dennis, MA 02660

CONNECTICUT CHARTER & PARTY BOAT
ASSOCIATION
34 Riverside Drive, Suite 25
Clinton, CT 06413

DELMARVA FISHERIES ASSOCIATION, INC.
110 North Cross Street
Chestertown, MD 21620

MARYLAND CHARTER BOAT ASSOCIATION, INC.
29 Craig Court
Conowingo, MD 21918

MONTAUK BOATMEN & CAPTAINS ASSOCIATION
P.O. Box 2328
Montauk, New York 11954,

                    *Plaintiffs*

                       v.

DOUGLAS BURGUM in his official capacity as
Secretary of the U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

U.S. DEPARTMENT OF THE INTERIOR
SERVE: Timothy Murphy, Acting Associate Solicitor
for the Division of General Law
1849 C Street, NW
Washington, DC 20240

PAUL SOUZA in his official capacity as Acting
Director of the U.S. Fish and Wildlife Service
1849 C Street, NW

Case No.:

1

Washington, DC 20240

U.S. FISH AND WILDLIFE SERVICE
SERVE: Timothy Murphy, Acting Associate Solicitor
for the Division of General Law
1849 C Street, NW
Washington, DC 20240

HOWARD LUTNICK in his official capacity as
Secretary of the U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

U.S. DEPARTMENT OF COMMERCE
SERVE: John K. Guenther, Acting General Counsel
1401 Constitution Avenue, NW
Washington, DC 20230

LAURA GRIMM in her official capacity as Administrator
of the National Oceanic & Atmospheric Administration
1401 Constitution Avenue, NW
Washington, DC 20230

NATIONAL OCEANIC & ATMOSPHERIC
ADMINISTRATION
SERVE: Annie Hawkins, General Counsel
1401 Constitution Avenue, NW
Washington, DC 20230

ATLANTIC STATES MARINE FISHERIES
COMMISSION
SERVE: Robert E. Beal, Executive Director
1050 N. Highland Street, Suite 200 A-N
Arlington, VA 22201

KATIE DYKES in her official capacity as Commissioner
of the Connecticut Department of Energy and
Environmental Protection
79 Elm Street
Hartford, CT 06106

CONNECTICUT DEPARTMENT OF ENERGY AND
ENVIRONMENTAL PROTECTION

SERVE: Melinda McWherter Decker. Director, Office of
Legal Counsel
79 Elm Street
Hartford, CT 06106

GREGORY PATTERSON in his official capacity as
Secretary of the Delaware Department of Natural
Resources and Environmental Control
112 S. French Street, Suite 206
Wilmington, DE 19801

DELAWARE DEPARTMENT OF NATURAL
RESOURCES AND ENVIRONMENTAL CONTROL
SERVE: Gregory Patterson, Secretary
112 S. French Street, Suite 206
Wilmington, DE 19801

ALEXIS A. LAMBERT in her official capacity as
Secretary of the Florida Department of Environmental
Protection
3900 Commonwealth Boulevard M.S. 49
Tallahassee, FL 32399

FLORIDA DEPARTMENT OF ENVIRONMENTAL
PROTECTION
SERVE: Justin G. Wolfe, General Counsel
3900 Commonwealth Boulevard M.S. 49
Tallahassee, FL 32399

WALTER RABON in his official capacity as
Commissioner of the Georgia Department of Natural
Resources
2 Martin Luther King, Jr. Drive, SE
Suite 1252 - East Tower
Atlanta, GA 30334

GEORGIA DEPARTMENT OF NATURAL
RESOURCES
SERVE: Kyle Pearson, Executive Counsel
2 Martin Luther King, Jr. Drive, SE
Suite 1252 - East Tower
Atlanta, GA 30334

CARL WILSON in his official capacity as Commissioner
of the Maine Department of Marine Resources
21 State House Station
Augusta, ME 04333

MAINE DEPARTMENT OF MARINE RESOURCES
SERVE: Carl Wilson, Commissioner
21 State House Station
Augusta, ME 04333

JOSHUA KURTZ in his official capacity as Secretary of
the Maryland Department of Natural Resources
580 Taylor Avenue
Annapolis, MD 21401

MARYLAND DEPARTMENT OF NATURAL
RESOURCES
SERVE: Shara M. Alpert, Assistant Attorney General
580 Taylor Avenue
Annapolis, MD 21401

REBECCA TEPPER in her official capacity as
Secretary of the Massachusetts Office of Energy and
Environmental Affairs
100 Cambridge Street, Suite 1020
Boston, MA 02114

MASSACHUSETTS OFFICE OF ENERGY AND
ENVIRONMENTAL AFFAIRS
SERVE: Rebecca Tepper, Secretary
100 Cambridge Street, Suite 1020
Boston, MA 02114

SARAH STEWART in her official capacity as
Commissioner of the New Hampshire Department of
Natural & Cultural Resources
172 Pembroke Rd.
Concord, NH 03301

NEW HAMPSHIRE DEPARTMENT OF NATURAL &
CULTURAL RESOURCES
SERVE: Sarah Stewart, Commissioner
172 Pembroke Rd.

Concord, NH 03301

SHAWN M. LATOURETTE in his official capacity as
Commissioner of the New Jersey Department of
Environmental Protection
401 E. State Street
7th Floor, East Wing
Trenton, NJ 08625

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION
SERVE: Melissa P. Abatemarco, Esq.
Director, NJDEP Office of Legal Affairs
401 E. State Street
7th Floor, East Wing
Trenton, NJ 08625

AMANDA LEFTON in her official capacity as Acting
Commissioner of the New York Department of
Environmental Conservation
625 Broadway
Albany, NY 12233

NEW YORK DEPARTMENT OF ENVIRONMENTAL
CONSERVATION
SERVE: Thomas Berkman, General Counsel
625 Broadway
Albany, NY 12233

PAM BREWINGTON CASHWELL in her official
capacity as Secretary of the North Carolina Department of
Natural and Cultural Resources
109 E. Jones Street
Raleigh, NC 27699

NORTH CAROLINA DEPARTMENT OF NATURAL
AND CULTURAL RESOURCES
SERVE: Jess Sutton, General Counsel
109 E. Jones Street
Raleigh, NC 27699

CINDY ADAMS DUNN in her official capacity as
Secretary of the Pennsylvania Department of
Conservation and Natural Resources
400 Market Street
Harrisburg, PA 17105

PENNSYLVANIA DEPARTMENT OF CONSERVATION
AND NATURAL RESOURCES
SERVE: Curtis C. Sullivan, Chief Counsel
400 Market Street
Harrisburg, PA 17105

TERRENCE GRAY in his official capacity as Director of
the Rhode Island Department of Environmental
Management
235 Promenade Street
Providence, RI 02908

RHODE ISLAND DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT
SERVE: Johann Donall, Legal Counsel
235 Promenade Street
Providence, RI 02908

THOMAS MULLIKIN in his official capacity as Director
of the South Carolina Department of Natural Resources
1000 Assembly Street
Columbia, SC 29201

SOUTH CAROLINA DEPARTMENT OF NATURAL
RESOURCES
SERVE: Susan O. Porter, General Counsel
1000 Assembly Street
Columbia, SC 29201

TRAVIS A. VOYLES in his official capacity as Secretary
of the Virginia Department of Natural and Historic
Resources
Patrick Henry Building
111 East Broad Street
Richmond, VA 23218

VIRGINIA DEPARTMENT OF NATURAL AND
HISTORIC RESOURCES
SERVE: Travis A. Voyles, Secretary
111 East Broad Street
Richmond, VA 23218

RICHARD JACKSON in his official capacity as Director
of District of Columbia Department of Energy and
Environment
1200 First Street, NE
Washington, DC 20002

DISTRICT OF COLUMBIA DEPARTMENT OF
ENERGY AND ENVIRONMENT
SERVE: David Dickman, General Counsel
1200 First Street, NE
Washington, DC 20002

POTOMAC RIVER FISHERIES COMMISSION
SERVE:  William L. Rice, Sr., Chairman
222 Taylor Street
Colonial Beach, VA 22443

*Defendants*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Fishing Boat Associations, on behalf of their members, which conduct charter boat rental and other businesses along and within the Atlantic coastal states, by and through their undersigned counsel, allege as follows:

### INTRODUCTION

1.      Plaintiffs are IRS § 501(c)(6) not-for-profit fishery trade associations consisting of charter boat captains and other fishing industry professionals engaged in boat rentals and other commercial activities across the Atlantic Ocean coastal states and their inland waterways including major bays and tributaries such as the Chesapeake Bay and Hudson River.  Their common mission

is to promote sportfishing, sightseeing and cruising throughout the Atlantic coast. As § 501(c)(6) organizations, all Plaintiffs have standing as adversely affected parties standing in the same shoes as their association members. *American Trucking Associations, Inc.* v. *Federal Motor Carrier Safety Admin.*, 724 F.3d 243, 247 (D.C. Cir. 2013).

2.    A study by the McGraw Center for Conservation found that recreational fishing, just with respect to one popular species (Striped Bass), was a $7.7 billion dollar contributor to economic activity along the East Coast in terms of jobs, direct retail sales, taxes, and related marina, tackle, hotel, restaurant, and other expenditures.[1]  Plaintiffs' boat rental component is the most critical factor in sustaining this line of business for shoreline communities and, in the bay states, numerous rural counties.

3.    In recent years, however, these charter fishing businesses and the family livelihoods that depend upon them are being brought to a halt by the combined and illegal actions of the Defendant Atlantic States Marine Fisheries Commission ("ASMFC" or "Commission"), and its 15 Interstate Compact member states individually named as Defendants.[2]  This purported Interstate Compact also illegally incorporates two nonstate governmental participants, also named as separate

---

[1]Southwick Associates: "The Economic Contributions of Recreational and Commercial Striped Bass Fishing," p.15 https://mcgraw.org/wp-content/uploads/2022/01/McGraw-Striped-Bass-Report-FINAL_compressed.pdf

[2] In order from north to south: Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, and Florida.

Defendants, as are the Commission's federal agency "partners"[3] which dominate the organization's mission and, in one recent year, funding (up to 99%) via federal appropriations.[4]

4.   As explained *infra*, this federal commandeering (and federal funding) of the ASMFC's state regulatory powers is, in and of itself, unconstitutional.  *New York v. United States*, 505 U.S. 144, 166 (1992).

## PARTIES

5.   Founded in 1959, Plaintiff Cape Cod Charter Boat Association ("CCCBA') actively engages in advocating for fair and equitable legislation and regulation concerning charter boat operations and sportfishing at both state and federal levels. Many of its members conduct fishing operations that are adversely affected by the conduct of the ASMFC and other Defendants in this case.

6.   Plaintiff Connecticut Charter & Party Boat Association ("CC&PBA") represents the Connecticut charter and party boat fishing industry advocating for its members' collective business growth and legislative rights pertaining to the for-hire industry.  Many of its members conduct fishing operations that are adversely affected by the conduct of the ASMFC and other Defendants in this case.

7.   Plaintiff Delmarva Fisheries Association, Inc. ("DFA"), is a private membership organization organized in 2016 as a representative of the seafood industry in and around Chesapeake Bay.  Many of its members conduct fishing operations that are adversely affected by the conduct of the ASMFC and other Defendants in this case.

---

[3] The U.S. Fish and Wildlife Service website states that "The three partners which share management responsibility for Atlantic striped bass are the Atlantic States Marine Fisheries Commission, the National Marine Fisheries Service and the U.S. Fish & Wildlife Service." https://www.fws.gov/law/atlantic-striped-bass-conservation-act#:~:text=The%20three%20partners%20which%20share,U.S.%20Fish%20and%20Wildlife%20Service

[4] For example, ASMFC's 2022 budget consisted of, as it does every recent year, a $733,444 contribution provided by all its member states, with the remainder consisting $96,930,614 in federal "cooperative agreements" from NOAA and USFWS (ASMFC 2023 Annual Report (p. 14-16)).

8.    Plaintiff Maryland Charter Boat Association ("MCBA") is a private membership organization organized in, and the largest professional group of Charter Boat Captains on the Maryland Chesapeake Bay.  Its mission is to promote sportfishing, sightseeing and cruising throughout the Maryland Chesapeake Bay including the Atlantic coastline.  Many of its members conduct fishing operations that are adversely affected by the conduct of the ASMFC and other Defendants in this case.

9.    Founded in 1965, Plaintiff Montauk Boatmen & Captains Association ("MB&CA") is organized as a group of local captains for the purpose of ensuring their voices were heard at the state and federal levels.  With more than 80 members as a non-profit, volunteer organization, it is dedicated to preserving the tradition of the sportfishing culture in Montauk and ensuring long-term and equal access to our local fisheries. Many of its members conduct fishing operations that are adversely affected by the conduct of the ASMFC and other Defendants in this case.

10.    Defendant Department of the Interior (16 U.S.C. § 742a) ("Interior Dept.") is a component of the Executive Office of the President and maintains a headquarters in Washington, D.C.  It is the federal agency that oversees the U.S. Fish and Wildlife Service ("USFWS"), also located in Washington, DC.  Defendant Douglas Burgum is the Secretary of the Interior and is sued in his official capacity. Secretary Burgum, in his capacity as Secretary of the Interior, is ultimately responsible for the actions of the USFWS.

11.    Defendant USFWS is an agency delegated within the Interior Dept. to implement regulation of fishing across the Atlantic seaboard states with the ASMFC (16 U.S.C. §§ 5152(10) and 5103 *et seq.*).  Defendant Paul Sousa is the Acting Director of the USFWS and is sued in his official capacity.  The Director of the USFWS is responsible in official capacity for the actions under USFWS.  The USFWS is also designated as the "primary research agency for the ASMFC.  Even though it is neither a state nor a member of the ASMFC, the USFWS voted in favor of the 2024

Striped Bass Addendum" without any legal authority to do so and thus acted in violation of the ASMFCs own Bylaws.[5]

12.    Department of Commerce (15 U.S.C. § 9442) ("Commerce Dept.") is a component of the Executive Office of the President and maintains a headquarters in Washington, DC.  It is the federal agency that oversees the National Oceanic & Atmospheric Administration ("NOAA") that also implements the regulation of fishing across the Atlantic seaboard states in conjunction the Interior Dept. and ASMFC (16 U.S.C. § 5103).  Defendant Howard Lutnick is the Secretary of the Commerce and is sued in his official capacity.  Secretary Lutnick, in his capacity as Secretary of the Commerce, is ultimately responsible for the actions of all divisions within the Commerce Dept.

13.    Defendant NOAA is the federal agency designated within the Commerce Dept. to perform the Commerce Dept.'s fishing mandates under federal law. Defendant Laura Grimm is the Director of NOAA and is sued in her official capacity.  The Director of NOAA is responsible in official capacity for the actions under NOAA.  Even though it is neither a state nor a member of the ASMFC, NOAA voted in favor of the 2024 Striped Bass Addendum" without any legal authority to do so and thus acted in violation of the ASMFCs own Bylaws.  *Id*., fn. 6, *supra.*

14.    Defendant ASMFC is a consortium of state governmental entities established as an advisory Interstate Compact as ratified by the U.S. Congress in 1942 (Pub. Law 77-539 (May 4, 1942)) ("Ratification I").[6]  It is headquartered in Arlington, VA with its 1942 membership consisting of the 15 Atlantic Coastal States from Maine to Florda.  For reasons described *infra,* the ASMFC membership roster is now unclear given its conversion from an advisory into a regulatory

---

[5] https://asmfc.org/wp-content/uploads/2025/01/CompactRulesRegs_Feb2016-1.pdf, (Art. VI).
[6] The ASMFC charter was amended and congressionally ratified in a manner not herein relevant in 1950 (Pub. Law 81-721) (Ratification II).

body in 1984[7] without individual state legislative concurrence nor subsequent U.S. Congressional ratification thereof.[8]

15.    The Defendant States of Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, and Florida are sovereign states of the United States of America.  The cited state offices develop, implement, and enforce marine and fishery laws and regulations in their respective states; the office heads, sued here in their official capacities, hold and/or designate their state representatives to the ASMFC with one voting right assigned to each state.  *Id*., fn. 6, *supra.*

16.  Defendant District of Columbia Department of Energy and Environment ("DCDE&E") is the office which regulates rivers and waters for fishable purpose in the nation's capital.  Richard Jackson is the Director of that office and is sued in his official capacity.  Even though it is neither a state nor a member of the ASMFC, DCDE&E voted in favor of the 2024 Striped Bass Addendum" without any legal authority to do so and thus acted in violation of the ASMFC's own Bylaws.  *Id*., fn. 6, *supra.*

17.  Defendant Potomac River Fisheries Commission ("PRFC") is the Maryland-Virginia bi-state regulatory authority for fishery matters in the Potomac River from Washington, DC to the Chesapeake Bay.  Jamie Green is the Chairman of authority and is sued in his official capacity.  *Id*., fn. 6, *supra.*  Even though it is neither a state nor a member of the ASMFC, PRFC voted in favor of the 2024 Striped Bass Addendum without any legal authority to do so and thus acted in

---

[7] Pub. Law 98-613 (Oct. 31, 1984).

[8] There are two other Interstate Fishery Compacts in the United States: The Gulf States Marine Fisheries Commission (Pub. Law 81-66 (May 19, 1949)) and Pacific States Marine Fisheries Compact (Pub. Law 80-232 (July 24, 1947)). The terms of their congressional ratification provide only advisory activities.

violation of the ASMFCs own Bylaws. By its participation in the ASMFC, the PRFC and the ASMFC is in further violation of law and the ASMFCs own Bylaws by providing additional and unwarranted voting power to the states of Maryland and Virginia.

**JURISDICTION AND VENUE**

18.  This Court has subject matter because this case arises under the Constitution and laws of the United States. U.S. Const., Amend. X ("Anti-Coercion" Doctrine); U.S. Const., Art. I, § 10, Clause 3 (Interstate Compacts); U.S. Const., Amend. V ("Regulatory" Taking); U.S. Const., Amend. XIV (Due Process of Law); and 28 U.S.C. § 1331.

19.  Venue is proper in this Court as Defendant federal executive agencies and individual officers are located in this District. 28 U.S.C. § 1391(e).

20.  This Court is authorized to award the requested relief under civil actions arising pursuant to the aforementioned constitutional and other provisions of law. 28 U.S.C. §§ 1361, 2201–2202

**STATUTORY AND REGULATORY BACKGROUND**

21.  The Magnuson–Stevens Fishery Conservation and Management Act (Pub. Law 94-265 (April 13, 1976)) ("MSA") is the primary law governing fisheries management in U.S. federal and state waters to include bays and other inland waterways connecting to the ocean. 16 U.S.C. §§ 1801-1883. As amended in numerous instances since its enactment in 1976, this statute now includes an extensive scheme to regulate commercial and recreational fishing directly and indirectly through mandates to the individual states when acting either individually or in compact with one another.

22.  The Defendant ASMFC was originally established by its participating states and then ratified by the U.S. Congress in 1942 as a non-regulatory body. (Pub. L. 77-539) with only the "power to recommend the coordination of the exercise of the police powers of the several states

13

within their respective jurisdictions … to the governors and legislatures of the various signatory states." (*Id*., Art. IV)

23.  The Advisory status of the ASMFC as an Interstate Compact changed dramatically in 1984 when it was designated pursuant to federal law in form of the Atlantic Striped Bass Conservation Act (16 U.S.C. §§ 5151, *et seq*. ("Striped Bass Act")) which delegated rulemaking powers to ASMFC for purposes of **"managing Atlantic striped bass,"** by means of a Fishery Management Plan ("FMP") to be **prepared and adopted by the Commission.**  *Id*., at § 5152(10) (Emphases added.)

24.  In 1993, the "Striped Bass Act" was supplemented through congressional enactment of the Atlantic Coastal Fisheries Cooperative Management Act (16 U.S.C. §§ 5101, *et seq.*) ("Coastal Fisheries Act"), which vastly extended ASMFC's fishery management authority by granting the Commission authority to **"implement and enforce"** FMPs for all 27 nearshore migratory fish species within the Atlantic coastal and inland waterways waters fished by all the Plaintiffs' organizations.  *Id*., at § 5104(b)(1)) (Emphasis added.)

25.  The MSA sets forth ten national standards for fishery conservation and management which all FMPs for all species must incorporate.  *Id*., at § 1851.

26.  The MSA also sets forth additional "required provisions" for all FMPs to incorporate.  16 U.S.C. § 1853.

27.  In addition, the ASMFC is responsible under federal law to determine "whether the enforcement of the Plan by each coastal State is satisfactory" (16 U.S.C. § 5153(a)(2)) and notifying the federal government of any non-compliance by any state.  *Id*., at § 5153(c).

28.     In short, the Striped Bass and Coastal Fisheries Acts converted the ASMFC from an advisory commission into a full-fledged partner with the federal government in <u>regulating</u> the fishing industry along the entire Atlantic coastline and all its shoreward tributaries.

29.     As to this legislative transformation, a contemporaneous Advisory Opinion published by Office of the North Carolina Attorney General concluded as follows:

> QUESTION: Did the Atlantic Coastal Fisheries Cooperative Management Act alter the purposes of the ASMFC as established in the interstate compact approved by the Congress?
>
> ANSWER: YES. The original purpose of establishing a means for the voluntary and cooperative regulation of fisheries by the member states was changed by Congress when it enacted the Atlantic Coastal Act. That Act empowered the ASMFC to make binding decisions, **enforceable against the states through sanctions levied by the United States Secretary of Commerce, even when there has been no determination by the states to join in a particular regulatory program**. Advisory Opinion: Constitutionality of the Atlantic Coastal Fisheries Cooperative Act (Mar. 26, 1996) (Emphasis added).

30.  Quoting further from that Opinion:

> The ASMFC has become the agency charged by the Congress with establishing and implementing fisheries management for migratory fish stocks in waters along the Atlantic seaboard that were historically state controlled. In the discharge of that power and duty, **the ASMFC is exercising the sovereignty of the United States, rather than the collective power of the subscribing states**. (Emphasis added).[9]

## FACTUAL BACKGROUND

31.     At an ASMFC meeting held on January 24, 2024, the Defendants voted 14-2 to impose severe limitations on Striped Bass fishing.  Officially denominated as Addendum II to Amendment

---

[9] NC Attorney General Opinion Letter is cited here for purposes of underscoring the ASMFC post-1984 role as a federal regulatory function; elsewhere in the letter, the constitutionality issue is also addressed: "Under the Supreme Court's analysis in *New York*, the method of effectuating federal policy set out in the Atlantic Coastal Act appears to _**not**_ be within the scope of previously recognized means whereby Congress may legitimately influence states to achieve federal policy goals. **(**Emphasis added). https://ncdoj.gov/opinions/constituionality-of-the-atlantic-coastal-fisheries-cooperative-act/

7 to the Interstate FMP for Atlantic Striped Bass ("2024 Striped Bass Addendum" or "Addendum II"). This regulation curtailed the livelihoods and business property values of all Plaintiff Fishing Boat Associations by: (1) shortening the fishing season; (2) reducing the maximum length of removable Striped Bass fish in the Chesapeake Bay from 36 to 31 inches; (3) lowering commercial quotas; and (4) in the case of "for hire" charter boats operating in the Chesapeake Bay, reduced each recreational fisher to one fish as opposed to the prior seasons' two fish (of longer length) per person.

32.  These modifications caused a decline of up to 75 percent in fishing revenue to the members of Plaintiffs DFA and MCBA (Exhibits A) and inflicted immediate and significant harm not just to Plaintiffs' businesses and their families, but to the businesses such as hotels and restaurants which depend on fishing and the related tourism (Exhibit B), to the individuals employed by these related businesses (Exhibit C), to the tax revenues of local county governments which were the closest to the scene of this impending, illegal and scientifically unfounded calamity (Exhibit D, Nos. 1-4), and to numerous other states (Exhibit E, Nos. 1-2) along the migratory path of the Atlantic Striped Bass which runs along the entire East Coast from Florida to Canada.

33.  Despite massive opposition in the form of hundreds of letters and in person meetings pleading with the ASMFC, its members states and other active participants, its self-described federal "partners" and chief funding sources (namely, NOAA and USFWS), not to proceed with this flawed plan, that advice was glibly dismissed. Defendants even disregarded the admonition of Mr. Michael Luisi, the Fisheries Manager at the Maryland Department of Natural Resources and the state's designee to the ASMFC, who warned the Commissioners "that cutting the state's

charter boat clients' catch to one fish a day 'will put people out of business.'" *Chesapeake Bay Magazine*: (Feb. 27, 2024).[10]

34.  Ignoring the warnings of its own staff, the Maryland Dept. of Natural Resources published regulations in conformance with the ASMFC Addendum II notwithstanding the fact that it ASMFC delegation voted against Addendum II due to threat of federal coercion as typified in this letter from the Office of the Maryland Attorney General declining to exercise any state support on behalf of its fishing industry pursuant to a request submitted in writing by Plaintiffs DFA and MCBA:

> Please be aware that under the Striped Bass Conservation Act … if ASMFC finds that a State fails to comply with ASMFC's Interstate Fishery Management Plan for Atlantic Striped Bass, or any amendment or addendum under the Plan, the Secretaries of the Department of Commerce and the Department of the Interior may impose a federal moratorium on **all** striped bass fishing in that State … Based on the aforementioned considerations, our Office declines to take any action… (Citations omitted.) (Emphasis in original.) (Exhibit F)

35.  The initial proceeding on this matter was filed on March 7, 2024 in the U.S. District Court for the District of Maryland.  A hearing was held on April 12, 2024, before the Honorable Richard J. Bennett.  The District Court issued a Letter Order, dated that same day, denying Plaintiffs' Motion for a Preliminary Injunction pending a decision on the merits.  During the hearing on Plaintiffs' motion, the Court observed that only the Office of the Maryland Attorney General had standing to contest an ASMFC action and had declined to do so.

36.  On April 29, 2024, Plaintiffs filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit to reverse the Court's Order on Plaintiffs' Motion for a preliminary injunction.  A hearing was held before the Fourth Circuit Court of Appeals on December 11, 2024

---

[10] https://www.bayjournal.com/news/fisheries/striped-bass-harvest-restrictions-trigger-widespread-impact/article_e5e19f68-d4c5-11ee-8f54-c37c5983df6c.html#:~:text=The%20new%20recreational%20catch%20size,of%20striped%20bass%20by%2014.5%25.

and that Court issued an opinion on February 4, 2024 stating that "[b]ecause Plaintiffs lack standing to pursue an injunction of the striped-bass plan … we remand with instructions to dismiss the case … because Plaintiffs sued the Commission, not Maryland."[11]

37.    Plaintiffs DFA and MCBA then filed Emergency Applications on two occasions with the Supreme Court for a Writ of Injunction for Interim Relief but these were denied.

38.    By this action and in light of critically important events described *infra* which have since occurred, DFA, MCBA and additional adversely affected Fishing Boat Association Co-Plaintiffs contest both the procedural and the substantive issues which have denied them a full hearing on the merits. Chief among these on the factual side is that, as predicted, the enforcement of Addendum II during the 2024 fishing season forced over 50 of the Plaintiffs MCBA's member businesses, which had been highly successful up until 2024, to close their doors and put their boats up for sale at what have proven to be "fire sale" prices.  (Exhibit A, *supra*.)

39.    These actions were taken despite ASMFC's own data conceding that Striped Bass fishing stock is "no longer experiencing overfishing." https://asmfc.org/wp-content/uploads/2025/01/AtlStripedBassFMPReview_FY2023.pdf  (p. 8) (Aug. 2024).[12]  If Striped Bass are not being overfished, how can more fishing limitations which are the gravamen of Addendum II (and this Complaint), be the answer to anything?

40.    Plaintiffs not only concur in Defendants' observation that there is no factual evidence that Striped Bass are being overfished, but Plaintiffs placed into the administrative record and continue

---

[11] As a consequence, the Fourth Circuit avoided having to address the constitutionality of the ASMFC structure under the anticommandeering doctrine.

[12] ASMFC also acknowledges that striped bass Atlantic Ocean habitats are not deemed a "Fish Habitat of Concern" https://asmfc.org/wp-content/uploads/2024/12/FHOC_Designations_January2024.pdf (p. 9)

to attest that the Striped Bass fish population in <u>all</u> U.S. coastal and inland waterways is "abundant," "never more plentiful," or "the best I have ever seen." (Exhibit G)

41.    The superior condition of the Striped Bass fishing environment in recent years is likewise the uniform opinion of expert fishermen not a party to this litigation.  For example, a New York Boat Captain who formerly served as a federal appointee for nine years at the Mid-Atlantic Fishery Management Council and six years as an appointee to the ASMFC, has stated as follows:

> There aren't many anglers around who wouldn't agree that the striped bass run in the New York Bight this fall [2024] was downright EPIC. And the spring/early summer? 'Twas really good too. Indeed, I said similar things last year, but yeah, man… this year was kinda ridiculous.  It's hard to articulate just how good it was.'[13]

42.    These are the official fishing numbers just released by the Maryland Department of Natural Resources further confirming advance warnings to the ASMFC and all other Defendants:

Electronic Harvest Reporting by Charter Boat Captains
Chesapeake Bay & Tributaries
(through Nov. 15, 2024)

|  | Number of Striped Bass Kept | Percentage Decline |
|---|---|---|
| 2022 | 100,997 |  |
| 2023 | 92,880 |  |
| 2024 | 26,595 | -73% |

43.    On December 14, 2024, the ASMFC reconvened to take comment regarding the 2024 changes and consider updated Striped Bass Stock Projections with regard to potential 2025 changes. The data distributed at this meeting flatly contradicted the ASMFC data on which the Addendum II

---

[13] Marine Fish Conservation Network (Jan. 24, 2024). Real World Striped Bass: Part I - Marine Fish Conservation Network (conservefish.org); *see also*, https://www.thefisherman.com/article/striped-bass-the-good-ol-days-are-now/ (Feb., 2023)

fishing limitations under challenge herein were premised.  That data projected that the probability

of rebuilding stock size projections at or above the 2029 goal had "dropped to only 15%."   But just

a year later, and before any 2024 changes could have actually been measured, the ASMFC concluded

that the Striped Bass population had suddenly risen to "a 50% probability"   https://asmfc.org/wp-

content/uploads/2025/01/2024_AtlStripedBassAssessmentUpdate.pdf (p.  iii)

44.    Factoring in the year earlier report where the ASMFC said that Striped Bass had a 97%

favorable ratio of reaching its spawning stock target, the three-year data read as follows:

ASMFC Projection of Achieving
Targeted Striped Bass Spawning Stock

| Fishing Year | Stock Assessment Year | Decision Date | Projection |
|---|---|---|---|
| 2023 | 2022 | Nov., 2022 | 97% |
| 2024 | "Updated" 2022 | Jan., 2024 | 15% |
| 2025 | 2023 | Dec., 2024 | 50% |

45.    There are in excess of 240 million Striped Bass in U.S. waters and the annual number of

fishing removals is approximately six million.  (https://www.asmfc.org/species/atlantic-striped-

bass (2024)).  Out of this magnitude, the ASMFC and other Defendants purport to be able to count

the current level of fish by one-year size, add in fishing mortality levels and then project that

estimate out five years to the adult female population in 2029.  It is a preposterous claim on its

face with their own results showing non-linear variances between 15-97 percent over just the last

three years.

46.    The usage of such clearly defective methodology fails to meet the most minimum due

process requirements or any possible justifiable basis for destroying Plaintiffs' businesses (*Motor*

*Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins.,* 463 U.S. 29 (1983)) and thus represents a Regulatory Taking of their property (*Lucas, v. South Carolina Coastal Council,* 505 U.S. 1003 (1992)) in violation of the Fifth Amendment of the U.S. Constitution.

47.  After the emergence of its defective methodology, the ASMFC was forced to state publicly in a March 9, 2025 newspaper article that "The science may be imperfect" regarding the entire Addendum II. project.   https://www.myeasternshoremd.com/kent_county_news/news/maryland-fishing-groups-take-striped-bass-restrictions-fight-to-supreme-court/article_ccd4ec6a-fc7d-11ef-a25a-437a4e4e1c5f.html

48.  Yet during a previous case on this subject matter, which was dismissed without prejudice for lack of standing as regards the State of Maryland (D-MD, C-24-0688; 4th Cir. C-24-1388), the sworn Declaration of the ASMFCs expert, dated April 4, 2024, stated that "The stock assessment model for striped bass, including the methods used for projections, has been extensively peer-reviewed by external experts and ... was scientifically sound and appropriate for management use, making it the best available scientific method for striped bass." [14]

49.  The recently revealed inaccuracy in the scientific evidence underlying Addendum II was such that Mr. Luisi, Maryland's top expert in the field, had to alert all the agency's stakeholders that the information used at its last meeting had to be withdrawn.[15]

50.  Further acknowledging the deficiencies in its own procedures, the ASMFC has just announced the new harvesting rules with respect to the Interstate FMP for American Lobster,

---

[14] In addition to its numerous and already cited federal controls over the ASMFC, the Fish and Wildlife Service of the Interior Department acts as the primary research agency for ASMFC. (Ratification I, Art. VII)

[15] In an e-mail dated April 16, 2025, Mr. Luisi reported to the ASMFC meeting attendees that "staff indicated to me just minutes before the meeting that **there was an error identified in the spreadsheet used to calculate the options we presented to you for discussion on April 3rd.** (Emphasis in original.)

which had been scheduled to go into effect on July 1, 2025, have been withdrawn in response to the fishing industry pointing out that the data from the ASMFC purporting to show a 35% decline in the lobster population was completely at odds with the actual evidence the fishermen were "seeing."[16]

51.    The collapse of the purported science behind the ASMFC and related governmental organizations has been so dramatic that the New England Fishery Management Council, which is itself a federal entity established under the MSA, said in an extensive letter/report dated Dec. 17, 2024"

> There has been a **fundamental breakdown in the scientific support** system for fisheries management in the New England region. This includes, but is not limited to, data collection systems and treatments, stock assessments, and peer review processes. The results of this deterioration in the quality of scientific products have contributed to extreme instability in catch advice and fishery yield (e.g., substantial up and down swings in catch advice year over year), impacts to markets and price (e.g., reduced supply chains and depressed ex-vessel revenue), **loss of community value** and infrastructure (e.g., reduced processing capacity, shifts in employment opportunities, loss of reliable and competent crew, and loss of recreational fishing opportunities), and **ultimately a trajectory towards substantial decline of the region's fishing industry.** [17] (Emphases added.)

52.    That letter, from a legislatively established federal entity (Pub. L. 94-265), faults the underlying science on the same grounds as this case (and the prior case), namely that "In recent years, there have been substantial up and down swings of catch advice for several stocks resulting from changes in assessment methods or application of data sources. Catch advice differences on the order of 50-90% in either direction have been common." (¶ 42) Annual disparities to this extent leave little room for doubt that the federal and state governmental data utilized to regulate fishing

---

[16] https://www.seafoodsource.com/national-fisherman/maine-lobster-lobstermen-celebrate-withdrawal-of-gauge-size-increase

[17] https://d23h0vhsm26o6d.cloudfront.net/241210-NEFMC-to-NEFSC-re-Scallop-Research-Track.pdf

across the entire Atlantic coastal states, not to mention the conclusions drawn therefrom, are so imprecise as to be false on their face.

53.    Notwithstanding, these procedural and substantive violations of law and the public admissions that it had relied upon invalid science, the federal government, the ASMFC and its Co-Defendant member states, its (illegal) non-member voting entities, and its self-described federal "partners" refused to take any actions to remediate the disastrous impact of 2024 Striped Bass Addendum (50 Chesapeake Bay companies already driven out of business) before the commencement of the 2025 fishing season on May 16, 2025.

54.    The Striped Bass limitations outlined above reflect the same unconstitutional structure and flawed scientific processes covering the entire range of ASMFC excessive, unreasonable and detrimental regulations emanating from the ASMFC with respect to all other fish species covering all its claimed participating states.

55.    As such, the association members of all the named Plaintiffs are entitled to declaratory and equitable ancillary relief from any and all ASMFC MPFs which have been imposed upon them by unconstitutional and inaccurately-based scientific data for which the evidence is already replete.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of U.S. Constitution

### (U.S. Const., Amend. X.  ("Anti-Coercion" Doctrine))

56.    Plaintiffs repeat and reincorporate all of their preceding averments as set forth in Paragraphs 1 through 55 as if set forth as here in full, and as the basis for this claim.

57.  Even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts. *New York v. U.S.* at 166.

58.  In 1984 and again in 1993, the Legislative Branch exceeded its authority under the Constitution by delegating to an Interstate Compact the authority to "prepare," "adopt," "implement," and "enforce" FMPs for all nearshore migratory fish species.  16 U.S.C. § 5152(10) and § 5104(b)(1).

59. Supreme Court cases subsequent to *New York v. U. S.* have reinforced the construction that principles of federalism disallow the Congress from coercing states into requiring or prohibiting acts within their own commerce powers. *See, e.g., Printz v. U.S.*, 521 U.S. 898 (1997) and *Murphy v. NCAA,* 584 U.S. 453 (2018).

60.  These legal deficiencies void Addendum II and support invalidating the entire ASMFC as it is currently constituted.

## COUNT II

### Violation of U.S. Constitution

### (U.S. Const., Art I, § 10, Clause 3 (Interstate Compacts)

61.  Plaintiffs repeat and reincorporate all of their preceding averments as set forth in Paragraphs 1 through 60 as if set forth as here in full, and as the basis for this claim.

62.  The last Congressional ratification of the ASMFC Interstate Compact was in 1950, but as to all subsequent federal legislation applicable to ASMFC, including the MSA in 1976, the Striped Bass Act in 1984, and the Coastal Fisheries Act in 1993, all of which delegated both federal mandates and regulatory powers to the Commission, there occurred no congressional ratification.

63.  Under *Delaware River Joint Toll Bridge Commission v. Oleksiak,* 612 F. Supp. 3d 428 (E.D. Pa. 2020) where, while deciding a dispute over an interstate compact between Pennsylvania and Delaware approved by the two states in 1934, approved by the Congress 1935, and then amended by the two states several times thereafter without the consent of Congress, the court noted that "We may only consider the terms of the Compact approved by Congress." *Id.* at 435; conf. *Del. River Joint Toll Bridge Comm'n v. Secy' Pa. Dep't of Lab. & Indus.*, 985 F.3d 189 (3rd Cir. 2021) (Emphasis added).

64.  The passage of separate legislation via a standard Act of Congress, even if it were non-coercive can be binding on the ASMFC *per se* without its compacting states executing by legislation or comparable consent to the interstate compact materially amending the powers of the Commission.

65.  On information and belief following reasonable inquiry, there was no individual state authorizing legislation or other consenting acts by all (or perhaps any) of the 15 compacting states subsequent to the 1942/1950 congressional ratifications.

66.  These legal deficiencies void Addendum II and support the invalidation of all post-1984 regulatory actions of the ASMFC.

## COUNT III

### Violation of U.S. Constitution

### U.S. Const., Amend. V ("Regulatory" Taking)

### (U.S. Constitution – 5th and 14th Amendments)

67.  Plaintiffs repeat and reincorporate all of their preceding averments as set forth in Paragraphs 1 through 66 as if set forth as here in full, and as the basis for this claim.

68.   Defendants have caused Plaintiffs to be deprived of their rights to property and livelihood secured and guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution without Due Process of Law.

69.   Defendants palpably abused their governmental authority through actions which were in all regards arbitrary, capricious, unreasonable, overly broad, based on false data, and otherwise wrongful in violation of the U.S. Constitution and other applicable federal law.

70.   The interests of Plaintiffs have been adversely and irreparably harmed and manifest injustice has resulted from Defendants' arbitrary, capricious, and unconstitutional actions.

## COUNT IV

### Violation of Civil Rights

### (Civil Rights Act of 1871 - 42 U.S.C. § 1983)

71.   Plaintiffs repeat and reincorporate all of their preceding averments as set forth in Paragraphs 1 through 70 as if set forth as here in full, and as the basis for this claim.

72.   The actions of the Defendants were also taken in violation of 42 U.S.C. § 1983 as they were performed concurrently under the color of authority of state law and have caused Plaintiffs to be deprived of their rights to property and livelihood secured and guaranteed under the aforesaid violations of the United States Constitution and without Due Process of Law.

73.   Defendants palpably abused its governmental authority through these actions were in all regards arbitrary, capricious, unreasonable, overly broad and otherwise wrongful in violation of Plaintiffs' federal and state civil and constitutional rights.

74.   The interests of Plaintiffs have been adversely and irreparably harmed and manifest injustice has resulted from Defendants' arbitrary, capricious, erroneous, and unconstitutional actions.

## COUNT V

### Violation of Maryland Constitution and Law

### (Maryland Const., and Declaration of Rights)

75.  Plaintiffs repeat and reincorporate all of their preceding averments as set forth in Paragraphs 1 through 74 as if set forth as here in full, and as the basis for this claim.

76.   The Constitution of the State of Maryland provides that any injury done to "person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land." Article 19.

77.   The actions of the Defendant State of Maryland were also taken in violation of § 10-124 of the Maryland Code which requires the state to "evaluate" the impact any proposed regulation on businesses by class and "consider: (1) the costs that the proposed regulation would impose on each class; and, (2) the difficulty of compliance for each class."

78.  Defendant State of Maryland patently abused its governmental authority through these actions which were in all regards arbitrary, capricious, based on false premises and adopted in wrongful violation of the federal and state civil and constitutional rights of Plaintiffs DFA and MBCA.

### REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request an order and judgment in their favor and against the Defendants comprising the following:

1.      An interim order and permanent judgment holding unlawful, enjoining, and setting aside in full the ASMFC 2024 Striped Bass Addendum approved on Jan. 24, 2024, and reauthorized on December 14, 2024;

2.      Costs of suit and attorneys' fees;

3.      Interest at the applicable Federal Post-Judgment rate; and,

4.      Such other relief as the Court deems necessary and just.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all of the claims so triable alleged herein.

Respectfully submitted,

*/s/ James J. Butera*
James J. Butera
Bar No. 164335
MEEKS, BUTERA & ISRAEL PLLC
2020 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 285-3382
jbutera@meeksbi.com

*/s/ Andrew C. Meehan*
Andrew C. Meehan
MacLeod Law Group, LLC
110 North Cross Street
Chestertown, Maryland 21620
Tel: (410) 810-1381
ameehan@mlg-lawyers.com
*Pro hac vice* pending

Attorneys for Plaintiffs