**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| CAPE COD CHARTER BOAT ASSOCIATON, et al., | ) ) ) |  |
| Plaintiffs, | ) ) | CASE NO.: 1:25-CV-01457-TNM |
| v. | ) ) |  |
| DOUGLAS BURGUM in his official capacity as Secretary of the U.S. Department of the Interior, et al., | ) ) ) ) |  |
| Defendants. | ) ) |  |

---

<u>**MEMORANDUM IN SUPPORT
OF GEORGIA AND SOUTH CAROLINA DEFENDANTS' JOINT
MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**</u>

COME NOW, Walter Rabon in his official capacity as Commissioner of the Georgia Department of Natural Resources, and the Georgia Department of Natural Resources (the "Georgia Defendants") who appear specially without submitting themselves to the jurisdiction of this Court, together with Thomas S. Mullikin, Ph.D., J.D., in his official capacity as Director of the South Carolina Department of Natural Resources, and the South Carolina Department of Natural Resources (the "South Carolina Defendants") (hereinafter collectively the "Defendants"), and pursuant to United States District Court for the District of Columbia LCvR 7(a), submit this, their Memorandum in Support of their Joint Motion to Dismiss, and, at the direction of this Court their joint Response to Plaintiffs' Motion for Preliminary Injunction, showing this Honorable Court the following:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 3

    I.   The Atlantic States Marine Fisheries Commission ................................................ 3

    II.  Addendum II ......................................................................................................... 5

    III. Georgia and South Carolina Striped Bass Fisheries ........................................... 6

ARGUMENT AND CITATIONS TO AUTHORITY ........................................................ 7

    I.   This Court lacks subject matter jurisdiction over all claims asserted against
        Defendants and the Complaint must be dismissed pursuant to
        Fed. R. Civ. P. 12(b)(1) ....................................................................................... 7

        A.  Plaintiffs lack standing to bring any of the claims lodged against
             Defendants ................................................................................................. 9

            1.   Plaintiffs' alleged injuries are not fairly traceable to any conduct
                of Defendants ................................................................................. 10

            2.   Plaintiffs' claims are not redressable by a favorable decision against
                Defendants ..................................................................................... 12

        B.  Plaintiffs' claims against Defendants are meritless ..................................... 14

        C.  Defendants are immune from suit under the Eleventh Amendment .......... 15

            1.   Defendants have not consented to be sued in federal court, nor have they
                waived sovereign immunity ............................................................. 18

            2.   Congress has not abrogated Eleventh Amendment immunity with
                respect to Plaintiffs' claims ............................................................. 18

    II.  Plaintiffs have failed to state any claim against Defendants upon which relief
        can be granted, and the Complaint must be dismissed as to Defendants pursuant
        to Fed. R. Civ. P. 12(b)(6) ................................................................................. 20

    III. The Court lacks personal jurisdiction over the Georgia Defendants because Plaintiffs
        have insufficiently served process on the Georgia Defendants and Plaintiffs' Complaint
        thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) ............................. 24

DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION ........................................................................................ 26

CONCLUSION .................................................................................................................... 29

APPENDIX .......................................................................................................................... 30

## TABLE OF AUTHORITIES

### Cases

*Abdullah v. Obama*
    753 F.3d 193 (D.C. Cir. 2014) ...................................................................27

*Alabama v. Pugh*
    438 U.S. 781 (1978) ...................................................................................16

*\*Alden v. Maine*
    527 U.S. 706 (1999) ...........................................................................16, 18

*Arbaugh v. Y & H Corp.*
    546 U.S. 500 (2006) .....................................................................................7

*\*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................20, 22, 23

*Atascadero State Hosp. v. Scanlon*
    473 U.S. 234 (1985) ...........................................................................17, 19

*Attias v. CareFirst, Inc.*
    865 F.3d 320 (D.C. Cir. 2017) .....................................................................9

*Barbour v. Wash. Metro Area Transit Auth.*
    374 F.3d 1161 (D.C. Cir. 2004) .................................................................17

*Bd. of Trustees of the Univ. of Ala. v. Garrett*
    531 U.S. 356 (2001) ...................................................................................19

*\*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................................20

*Bell v. Hood*
    327 U.S. 678 (1946) ...................................................................................14

*\*Blumenthal v. Trump*
    949 F.3d 14 (D.C. Cir. 2020) .......................................................................9

*Bond v. United States*
    564 U.S. 211 (2011) ...................................................................................21

*Bread for the City, Inc. v. U.S. Dep't of Agr.*
    211 F. Supp. 3d 327 (D.D.C. 2016) ..............................................................7

*Chaplaincy of Full Gospel Churches v. England*
    454 F.3d 290 (D.C. Cir. 2006) ...................................................................27

*Clevinger v. Advoc. Holdings, Inc.*
    134 F.4th 1230 (D.C. Cir. 2025) ................................................................27, 28

*College Sav. Bank v. Fl. Prepaid Post-Secondary Educ. Expense Bd.*
    527 U.S. 666 (1999) ..............................................................................18

*Coubaly v. Cargill, Inc.*
    2025 U.S. App. LEXIS 18090 (D.C. Cir. 2025) ...................................10–11

*Covey Run, LLC v. Wash. Capital, LLC*
    245 F. Supp. 3d 9 (D.D.C. 2017) .............................................................20

*Davis v. Pension Benefit Guar. Corp.*
    571 F.3d 1288 (D.C. Cir. 2009) ...............................................................27

*Dellmuth v. Muth*
    491 U.S. 223 (1989) ..............................................................................19

*Delmarva Fisheries Ass'n v. Atl. States Marine Fisheries Comm'n*
    2024 U.S. Dist. LEXIS 72432 (D. Md. April 22, 2024) ...........................5–6

*Delmarva Fisheries Ass'n, Inc. v. ASMFC*
    127 F.4th 509 (4th Cir. 2025) ........................................................6, 11, 14

*Doe 1 v. Apple, Inc.*
    96 F.4th 403 (D.C. Cir. 2024) .................................................................10

*Edelman v. Jordan*
    415 U.S. 651 (1974) ..............................................................................18

*EEOC v. St. Francis Xavier Parochial Sch.*
    117 F.3d 621 (D.C. Cir. 1997) .................................................................20

*Erby v. United States*
    424 F. Supp. 2d 180 (D.D.C. 2006) ...........................................................7

*FCC v. Consumers' Rsch.*
    145 S. Ct. 2482 (June 27, 2025) ...............................................................12

*Florida Prepaid Post-Secondary Educ. Expense Bd. v. College Sav. Bank*
    527 U.S. 627 (1999) ...........................................................................18–19

*FOP Dep't of Corr. Labor Comm. v. Williams*
    375 F.3d 1141 (D.C. Cir. 2004) ...............................................................14

*Ford Motor Co. v. Dept. of Treasury of Indiana*
    323 U.S. 459 (1945) ...........................................................................16–17

iv

*Giles v. Med. Contrs. CMS*
    680 F. Supp. 2d 633 (D. Del. 2010)....................................................22

*Gulf Coast Mar. Supply, Inc. v. United States*
    867 F.3d 123 (D.C. Cir. 2017) .................................................14–15

*Gustave-Schmidt v. Chao*
    226 F. Supp. 2d 191 (D.C. Cir. 2002)....................................................8

*Hafer v. Melo*
    502 U.S. 21 (1991)........................................................................16–17

*Hans v. Louisiana*
    134 U.S. 1 (1890)................................................................................16

*Hurd v. Dist. of Columbia*
    864 F.3d 671 (D.C. Cir. 2017) ...........................................................21–22

*Kareem v. Haspel*
    986 F.3d 859 (D.C. Cir. 2021) ..............................................................10

*Kentucky v. Graham*
    473 U.S. 159 (1985) ...........................................................................17

*Kowal v. MCI Commc'ns Corp.*
    16 F.3d 1271 (D.C. Cir. 1994) ...........................................................20

*Lapides v. Bd. of Regents*
    535 U.S. 613 (2002) ...........................................................................16

*Lovelace v. Software Spectrum, Inc.*
    78 F.3d 1015 (5th Cir. 1996) ...........................................................20–21

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992)..................................................................7, 9–10

*Madden v. Cleland*
    105 F.R.D. 520 (N.D. Ga. 1985)........................................................24, 25

*Marshall v. Labor & Indus.*
    89 F. Supp. 2d 4 (D.D.C. 2000) .........................................................16

*Martha's Vineyard/Dukes County Fishermen's Ass'n v. Locke*
    811 F. Supp. 2d 302 (D.D.C. 2011)..................................................20, 23

*Morrisey v. Mayorkas*
    17 F.4th 1150 (D.D.C. 2021) ..............................................................25

*Newdow v. Roberts*
  603 F.3d 1002 (D.C. Cir. 2010) ...................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984) ...............................................................................17–19

*Raines v. Byrd*
  521 U.S. 811 (1997) ...................................................................................9

*RELX, Inc. v. Baran*
  397 F. Supp. 3d 41 (D.D.C. 2019) .................................................................8

*Schmidt v. U.S. Capitol Police Bd.*
  826 F. Supp. 2d 59 (D.D.C. 2011) .............................................................7–8

*Seminole Tribe of Florida v. Florida*
  517 U.S. 44 (1996) ...........................................................................16–17, 19

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*
  788 F.2d 600 (9th Cir. 1986) .......................................................................16

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) ....................................................................................9

*Stafford v. FBI*
  2025 U.S. Dist. LEXIS 140007 (D.D.C. 2025) ...............................................7

*Steel Co. v. Citizens for a Better Env't*
  523 U.S. 83 (1998) .....................................................................................7

*Twin Rivers Paper Co., LLC v. SEC*
  934 F.3d 607 (D.C. Cir. 2019) ......................................................................9

*Ware EI v. SSA*
  2019 U.S. Dist. LEXIS 193691 (D.D.C. 2019) ...............................................8

*Warth v. Seldin*
  422 U.S. 490 (1975) ..................................................................................10

*Will v. Michigan Dep't of State Police*
  491 U.S. 58 (1989) ...............................................................................16, 23

*World-Wide Volkswagen Corp. v. Woodson*
  444 U.S. 286 (1980) ..................................................................................22

## Constitutional Provisions

U.S. Const., art. I, § 10, cl. 3 ....................................................................................1, 3

U.S. Const., amend. V ...............................................................................................1

U.S. Const., amend. X ...............................................................................................1

U.S. Const., amend. XI..........................................................................................2, 15

## Statutes

*77 P.L. 539 (May 4, 1942), as amended 81 P.L. 721 (1950)............................3–4, 13, 22

16 U.S.C. §§ 5101–08 ...............................................................................................4

16 U.S.C. §§ 5104–08 .............................................................................................22

16 U.S.C. § 5104(a) ................................................................................................22

16 U.S.C. § 5104(a)(1) ..............................................................................................4

16 U.S.C. §§ 5105–06 ...............................................................................................4

16 U.S.C. §§ 5151–58 ...............................................................................................5

18 U.S.C. § 1801 *et seq*...........................................................................................4

42 U.S.C. § 1983.................................................................................................2, 23

Fed. R. Civ. P. 4(c) .................................................................................................24

Fed. R. Civ. P. 4(d) ................................................................................................24

Fed. R. Civ. P. 4(j)(2) .............................................................................................24

Fed. R. Civ. P. 4(m)........................................................................................3, 24, 25

*Fed. R. Civ. P. 12(b)(1).....................................................................................7–8, 14

Fed. R. Civ. P. 12(b)(5).......................................................................................24, 25

*Fed. R. Civ. P. 12(b)(6).........................................................................................19

Fed. R. Evid. 201(b)................................................................................................21

O.C.G.A. § 9-11-4(c)...............................................................................................24

O.C.G.A. § 9-11-4(d)...............................................................................................25

O.C.G.A. § 12-2-1(a) ........................................................................................................25

O.C.G.A. § 12-2-1(b) ........................................................................................................25

## INTRODUCTION

Cape Cod Charter Boat Association, Connecticut Charter & Party Boat Association, Delmarva Fisheries Association, Inc., Maryland Charter Boat Association, Inc., and Montauk Boatmen & Captains Association ("Plaintiffs") are business associations and/or organizations comprised of charter boat companies and fishing industry professionals doing business in the Chesapeake Bay, the Hudson River, and off the Northeastern coast of the United States. In their Complaint for Declaratory and Injunctive Relief, filed May 13, 2025 ("Complaint"), Plaintiffs claim that certain actions taken by the Atlantic States Marine Fisheries Commission ("ASMFC")—which was created by an interstate compact and approved by Congress—caused them pecuniary loss, and that said actions were unlawful and unconstitutional.

The forty-two defendants named in the Complaint are Federal and State actors, primarily State agencies and agency heads from the States represented on the ASMFC, charged with regulating and enforcing fishing regulations in the respective states (discussed further below).

At issue in this case is a 2024 addendum to a "fisheries management plan" instituted by the ASMFC, the purpose of which was to protect and/or preserve the population of migratory Atlantic Striped Bass off the Atlantic coast of the United States.

Plaintiffs allege that this addendum has harmed their commercial fishing and charter businesses. Count I claims that certain federal laws expanding the scope and authority of the ASMFC are unconstitutional, running afoul of the "anti-coercion" doctrine of the Tenth Amendment. Plaintiffs further claim in Count II that the ASMFC violates U.S. CONST., art. I, § 10, cl. 3, pertaining to interstate compacts, because neither Congress nor the ASMFC's member States ratified the expanded scope and authority of the interstate compact. Count III claims that the addendum at issue amounts to a regulatory taking under the Fifth Amendment, which

1

violates Plaintiffs' Fifth and Fourteenth Amendment due process rights.  Count IV claims that defendants have violated the Civil Rights Act of 1971, namely 42 U.S.C. § 1983, because the ASMFC's actions were performed under color of authority of state law, and deprived Plaintiffs their right to property and livelihood.  Finally, in Count V, Plaintiffs assert a claim specifically against the State of Maryland for violation of its own constitution and laws.[1]  Plaintiffs' prayer for relief seeks only a permanent injunction, holding the addendum at issue unlawful, along with an ancillary request for attorney fees and interest.

With respect to Defendants, the Complaint should be dismissed for several reasons.  As a threshold matter, this Court lacks subject matter jurisdiction to adjudicate any of Plaintiffs' claims.  Plaintiffs lack Article III standing to sue Defendants because no action of Defendants is fairly traceable to Plaintiffs purported injuries, and Plaintiffs injuries are not redressable. Further, Plaintiffs claims against Defendants are frivolous and wholly without merit because (i) it was the ASMFC, not any individual State, that approved the addendum; (ii) the addendum does not apply to Georgia or South Carolina, neither State was on the board that proposed the addendum, nor did either State cast a vote on the addendum; (iii) neither Georgia nor South Carolina have migratory Atlantic Striped Bass in their waters; and (iv) Plaintiffs do not do business in Georgia or South Carolina waters.  Finally, this Court lacks subject matter jurisdiction because the States of Georgia and South Carolina, including the state agencies and department heads named in this action, are immune from suit pursuant to the Eleventh Amendment of the United States Constitution.

---

[1] Counts I and II are not lodged at any defendant in particular and simply challenge the constitutionality of the scope and authority of the ASMFC and certain federal law(s).  Count V is specifically directed at the State of Maryland and not Defendants.  While these Counts are not directed at Defendants and must be dismissed for that reason alone, they must also be dismissed according to the arguments hereinbelow.

Regardless of whether the Court has subject matter jurisdiction, Plaintiffs have failed to state any claims against Defendants upon which relief can be granted. Finally, service on the Georgia Defendants was insufficient and this Court lacks personal jurisdiction over them. Plaintiffs have also failed to file proof of service on Defendants as required by Fed. R. Civ. P. 4(m).

Plaintiffs previously sued the ASMFC in the District of Maryland on virtually the same grounds. That case was dismissed for lack of standing (discussed below). Now seeking another bite at the apple, Plaintiffs filed this Complaint which is nothing short of a "shotgun pleading," its purpose to ensure that at least one claim will survive against at least one of the three-and-a-half dozen defendants named in this action. In any event, Plaintiffs have no legitimate quarrel with Defendants. Based on the within and foregoing, Defendants respectfully request this Court GRANT their Joint Motion to Dismiss and DISMISS the Complaint in its entirety as to Defendants.

## STATEMENT OF FACTS

### I.    The Atlantic States Marine Fisheries Commission.

On May 4, 1942, pursuant to the "Compact Clause," of U.S. CONST. art. I, § 10, cl. 3, Congress approved an interstate compact "relating to the better utilization of the fisheries…of the Atlantic seaboard and [created] the Atlantic States Marine Fisheries Commission." 77 P.L. 539 (May 4, 1942), as amended 81 P.L. 721 (1950) (the "Compact"). The purpose of the Compact was and is to "promote the better utilization of the fisheries, marine, shell and anadromous of the Atlantic seaboard by the development of a joint program for the promotion and protection of such fisheries, and by the prevention of the physical waste of fisheries from any cause." 77 P.L. 539, art. I. The compacting States are those along the Atlantic coast of the

3

United States, including Georgia and South Carolina.  77 P.L. 539, art. II.  Each member-State of

the Compact was required to appoint three representatives to the ASMFC, including the

executive officer of the administrative agency of the state charged with the conservation of

fishery resources, a member of the state legislature, and a citizen having knowledge of and

interest in marine fisheries.  77 P.L. 539, art. III.  Initially, the ASMFC was purely advisory, and

coordinated with the member-States to preserve the Atlantic fisheries.  77 P.L. 539, art. IV.  The

1950 amendment removed the expiration of the Compact, and provided that the ASMFC could

be designated as a "joint regulatory agency with such powers as [the States] may jointly

confer…for the regulation of the fishing operations of the citizens and vessels of such

designating states with respect to specific fisheries in which such States have a common

interest."  81 P.L. 721, amend. 1.  Nothing in the Compact waives any federal or state sovereign

immunity.  *See generally* 77 P.L. 539.

In 1993, Congress adopted the Atlantic Coastal Fisheries Cooperative Management Act

("Fisheries Act") in response to concerns regarding inconsistent state and federal regulation

detrimental to coastal fisheries.  16 U.S.C. §§ 5101–08.  The Fisheries Act required the ASMFC

to work with regional fishery management counsels established under the Fishery Conservation

and Management Act of 1976 or the "Magnuson-Stevens Act," 18 U.S.C. § 1801 *et seq.*, to

create fisheries management plans ("FMPs") for certain species in Atlantic coastal waters.

16 U.S.C. § 5104(a)(1).  Under the Fisheries Act, if the ASMFC finds that a State is

noncompliant with the adopted FMPs, the ASMFC notifies the U.S. Secretary of Commerce and

U.S. Secretary of the Interior; after which the Secretary of Commerce makes findings regarding

the alleged noncompliance and may take appropriate action including instituting a moratorium

on fishing certain species in the waters of the noncomplying State.  16 U.S.C. §§ 5105–06.  The

interplay between the ASMFC, the Fisheries Act, and the Magnuson-Stevens Act effectively gives the ASMFC oversight of certain species in Atlantic coastal waters, including the Atlantic Striped Bass.  16 U.S.C. §§ 5151–58.

## II.    Addendum II.

In May 2023, the Atlantic Striped Bass Management Board ("Striped Bass Board") of the ASMFC (of which neither Georgia nor South Carolina are board members)[2] proposed Addendum II to Amendment 7 of the Atlantic Striped Bass FMP ("Addendum II").  Addendum II addressed rebuilding the stock of Atlantic Striped Bass, specifically for the Atlantic Ocean and Chesapeake Bay fisheries; it reduced the bag limit for Atlantic Striped Bass; reduced the slot limit (the size of fish that may be kept); changed the open fishing season; and reduced commercial quotas.  (Ex. B at 12–15; Compl. ¶ 31).[3]  The ASMFC adopted Addendum II in a twelve to four vote, a vote in which neither Georgia nor South Carolina took part.  (Ex. C at 60).[4]

Plaintiffs claim that Addendum II caused a sharp decline in their fishing revenues.  (Compl. ¶ 32).  On March 7, 2024, in a directly related action asserting virtually the same claims, Plaintiffs filed suit against the ASMFC in the United States District Court for the District of Maryland.  (Compl. ¶ 35; *Delmarva Fisheries Ass'n v. Atl. States Marine Fisheries Comm'n*,

---

[2] On January 24, 2024, the Striped Bass Board approved Addendum II which moved to the full ASMFC for a vote.  Neither Georgia nor South Carolina are members of the Striped Bass Board and neither voted for Addendum II's approval at the Striped Bass Board or the full ASMFC. Official minutes of the meeting of the Striped Bass Board approving the addendum are attached hereto as Exhibit A and are incorporated herein.  A roll of voting members of the Striped Bass Board can be found at Ex. A, p. 2.

[3] A copy of Addendum II is attached hereto as Exhibit B and is incorporated herein.

[4] Minutes reflecting ASMFC's adoption of Amendment II are attached hereto as Exhibit C and are incorporated herein.

2024 U.S. Dist. LEXIS 72432 (D. Md. April 22, 2024)). Prior to the case reaching the merits, Plaintiffs sought a preliminary injunction, which was denied. (Compl. ¶ 35). Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit, which dismissed the case for lack of standing. (Compl. ¶ 36; *Delmarva Fisheries Ass'n, Inc. v. ASMFC*, 127 F.4th 509 (4th Cir. 2025)).[5] Barely three months after their case was dismissed, Plaintiffs filed the present action.

## III.    Georgia and South Carolina Striped Bass Fisheries.

As stated above, Plaintiffs have no legitimate quarrel with Georgia and South Carolina, in large part because Georgia and South Carolina are in similar, unique positions regarding this dispute. Neither Georgia nor South Carolina have migratory stock of Atlantic Striped Bass in their waters. (Ex. D ¶ 9; Ex. E ¶ 8).[6] In fact, the scope of Addendum II does not even apply to Georgia and South Carolina because "[t]he management unit [for Atlantic Striped Bass] includes the coastal migratory stock from Maine through North Carolina." (Ex. B at 1). This means simply that Addendum II does not apply to Georgia or South Carolina, and as such, neither State,

---

[5] In *Delmarva*, Plaintiffs sued only the ASMFC. The District Court, denying Plaintiffs' preliminary injunction, reasoned that Plaintiffs likely lacked standing because it was not the ASMFC that regulated Plaintiffs, but the State of Maryland (where they do business), and even if Plaintiffs sued Maryland, they made no allegations (and it was also unlikely) that enjoining the ASMFC would cause Maryland to rescind its regulations. *Delmarva*, 127 F.4th at 513–14. The Fourth Circuit agreed and directed the district court to dismiss the complaint on remand for Plaintiffs' failure to establish standing at the pleading stage. *Id.* at 515. The Court reasoned that Plaintiffs were regulated by Maryland, not the ASMFC, and the ASMFC only recommends regulations to the States in accordance with the Compact. *Id.* at 515, n.4. The Court also found unpersuasive the argument that the ASMFC coerced Maryland to enact the regulations, because Maryland voluntarily entered the Compact, and could withdraw for any reason (citing the Compact). *Id.* at 515–16.

[6] Exhibit D is the Affidavit of Douglas Haymans, Director of the Coastal Resources Division of the Georgia Department of Natural Resources and a Georgia delegate to the ASMFC. Exhibit E is the Affidavit of Blaik Keppler, Deputy Director of the Marine Resources Division of the South Carolina Department of Natural Resources, and a South Carolina delegate to the ASMFC. Said exhibits are attached hereto and incorporated herein.

nor its representatives to the ASMFC are members of the Striped Bass Board, nor did they cast a

vote on Addendum II. (Ex. A at 2; Ex. C at 60). Further, upon information and belief, neither

Plaintiffs, nor any of the businesses they represent, conduct business in Georgia or South

Carolina waters. There are no allegations in the Complaint to the contrary.

## ARGUMENT AND CITATIONS TO AUTHORITY

**I.      This Court lacks subject matter jurisdiction over all claims asserted against
Defendants and the Complaint must be dismissed pursuant to Fed. R. Civ. P.
12(b)(1).**

This Court lacks subject matter jurisdiction to adjudicate the claims asserted against

Defendants because (1) Plaintiffs lack Article III standing; (2) the claims are meritless; and

(3) Defendants are immune from suit pursuant to the Eleventh Amendment of the United States

Constitution.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction

over the plaintiffs' claims. *Bread for the City, Inc. v. United States Dep't of Agriculture*, 211 F.

Supp. 3d 327, 329 (D.D.C. 2016). When a defendant files a 12(b)(1) motion to dismiss, the

plaintiff bears the burden of establishing facts that support jurisdiction by a preponderance of the

evidence. *Id.* (citing *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006); *Lujan v.

Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Since subject matter jurisdiction is statutory and a

constitutional Article III requirement and cannot be waived, the Court must independently satisfy

itself that it has jurisdiction to hear plaintiffs' claims. *Bread for the City, Inc.*, 211 F. Supp. 3d at

329 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

The Court must begin with challenges of subject matter jurisdiction before reaching other

grounds for dismissal. *Stafford v. FBI*, 2025 U.S. Dist. LEXIS 140007, *3 (D.D.C. 2025) (citing

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998); *Schmidt v. U.S. Capitol Police*

*Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (explaining that when a defendant files motions under

both 12(b)(1) and 12(b)(6), the court must examine the 12(b)(1) challenge first because "a lack

of subject matter jurisdiction renders all other defenses and objections moot.")).

Rule 12(b)(1) motions to dismiss "may be presented as a facial or factual challenge.  A

facial challenge attacks the factual allegations of the complaint that are contained on the face of

the complaint, while a factual challenge is addressed to the underlying facts contained in the

complaint." *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 47 (D.D.C. 2019) (citations omitted).

Unlike in a 12(b)(6) motion, a court ruling on a 12(b)(1) motion may consider evidence beyond

the four corners of the complaint and material subject to judicial notice.  *Ware EI v. SSA*, 2019

U.S. Dist. LEXIS 193691, *4 (D.D.C. 2019) (citing *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d

191, 195 (D.D.C. 2002)).

In sum, the Court, as a threshold matter, must resolve whether it has subject matter

jurisdiction over Plaintiffs' claims against Defendants.  In deciding whether it has subject matter

jurisdiction the Court may look to extrinsic evidence not appended to the pleadings (such as the

affidavits and other materials attached to this Memorandum).[7]  If, and only if, the Court is

satisfied that it has subject matter jurisdiction, should it move on to the other grounds for

dismissal raised herein.

---

[7] The extrinsic evidence referenced and attached to this Memorandum are included only for the Court's determination of subject matter jurisdiction and is not presented in support of Defendants' Fed. R. Civ. P. 12(b)(6) argument(s), except to the extent the Court takes judicial notice of certain facts contained therein (i.e., official ASMFC documents including meeting minutes).

### A.    Plaintiffs lack standing to bring any of the claims lodged against Defendants.

Plaintiffs lack standing because none of their alleged injuries are traceable to any conduct of Defendants, nor are Plaintiffs' injuries redressable.  Accordingly, there is no actual case or controversy between Plaintiffs and Defendants, and this Court lacks subject matter jurisdiction.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.  Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy [under Article III of the United States Constitution]."  *Blumenthal v. Trump*, 949 F.3d 14, 18 (D.C. Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotations omitted)); *see also Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) ("Standing is a prerequisite to the existence of a [c]ase or [c]ontroversy, which itself is a precondition to the exercise of judicial power.") (internal quotations and alterations omitted). The party invoking federal jurisdiction bears the burden of establishing standing, "which must be supported in the same way as any other matter on which the party bears the burden of proof." *Twin Rivers Paper Co., LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019) (quoting *Lujan*, 504 U.S. at 561).

To establish standing, a plaintiff must at minimum prove (1) an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision.  *Blumenthal*, 949 F.3d at 18 (citing *Lujan*, 504 U.S. at 560 ("Put differently, our standing inquiry precedes our merits analysis and focuses on whether the plaintiff is the proper party to bring the suit.") and *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  The absence of any one element defeats standing.  *Lujan*, 504 U.S. at 561.

### 1.    Plaintiffs' alleged injuries are not fairly traceable to any conduct of Defendants.

The "fairly traceable" element of standing means there must be a "causal connection between the injury and the conduct complained of – the injury has to be 'fairly [ ] traceable to the challenged action of the defendant, and not…the result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560–61 (citations omitted). The chain of causation may not be attenuated, nor may the plaintiff's allegations be conclusory. *Coubaly v. Cargill, Inc.*, 2025 U.S. App. LEXIS 18090 at *5–6 (D.C. Cir. 2025) ("Article III requires more particularized allegations of fact.") (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 409 (D.C. Cir. 2024); *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021)).

In *Coubaly*, the plaintiffs sued several cocoa importers for violation of a federal law that created a civil remedy against any person who knowingly benefits from participation in a venture that violates federal slavery and human trafficking laws. *Coubaly*, 2025 U.S. App. at *3. The importers moved to dismiss for lack of standing which was granted by the district court because the plaintiffs failed to connect the defendants to specific cocoa plantations, let alone the plantation where plaintiffs had worked. *Id.* at *4. In sum, the district court ruled that the complaint lacked the specificity needed to establish causation under Article III. *Id.* The United States Court of Appeals for the D.C. Circuit agreed, finding insufficiently detailed facts in the complaint, and a lack of causal connection between the plaintiffs and the importers; "[a]t most, the Plaintiffs allege that some farms were in areas that primarily sold cocoa to certain importers, and other farms were in areas that sold to all importers." *Id.* at 8. The Court held that the allegations were nonspecific and too conclusory, and "[t]o show standing at the motion-to-

dismiss stage, the Plaintiffs needed to plausibly allege specific facts showing that the [defendants] sourced cocoa from the farms where they worked…." *Id.* at 8–9.

On the face of the Complaint, Plaintiffs have done less than the plaintiffs in *Coubaly* to show a causal connection between Defendants' conduct and Plaintiffs' alleged injuries. The only allegations in the Complaint linking Defendants to this matter at all are allegations that Georgia and South Carolina are member States of the ASMFC and conclusory statements that all "defendants" have acted unlawfully (Compl. ¶¶ 14–15, 67–74). There are no facts in the Complaint that allege Plaintiffs even do business in Georgia or South Carolina waters, which would certainly be a requirement[8] to show that Defendants' actions have harmed Plaintiffs. (*See generally*, Compl.).

Factually, Defendants had no part in proposing or passing Addendum II, as neither Georgia nor South Carolina have the migratory stock of Atlantic Striped Bass at issue in this case (Ex. D ¶¶ 9, 13–16; Ex. E ¶¶ 8, 12–15). Addendum II does not apply to Atlantic Striped Bass in Georgia and South Carolina (Ex. B at 1), neither Georgia nor South Carolina is on the Striped Bass Board (Ex. A at 2), nor did either State cast a vote on Addendum II when it came before the full ASMFC. (Ex. C at 60).

Even if Plaintiffs can assert some cogent argument showing they have suffered injury in fact, and that their injury may be redressed by the relief requested in the Complaint, there is no situation in which Plaintiffs can satisfy their burden to show that their alleged injuries are fairly traceable (causally connected) to any conduct of Defendants, without which there is no standing.

---

[8] Plaintiffs are regulated by the States in which they fish, not the Commission or any other States. *See Delmarva*, 127 F.4th at 510 ("Plaintiffs lack standing because they are regulated by Maryland, not by the Commission[.]"); *see also id.* at 515, n.4.

### 2.    Plaintiffs' claims are not redressable by a favorable decision against Defendants.

Plaintiffs also lack standing because their alleged injuries cannot be redressed by any relief granted against the Defendants.  Because redressability is an essential element of Article III standing, Plaintiffs Complaint must be dismissed as against the Defendants.

Where the independent actions of third parties, who are not before the court, are required to ensure performance of the sought after remedy, the injuries are not judicially redressable because it is "impossible for [the] court to grant [the] relief."  *Newdow v. Roberts*, 603 F.3d 1002, 1010–12 (D.C. Cir. 2010) (overruled in part on other grounds in *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2496, n.1 (June 27, 2025)).  In *Newdow*, the plaintiffs sought to enjoin in future presidential inauguration ceremonies all use of the phrase "so help me God," and named as defendants the Chief Justice of the United States, the various committees and organizations responsible for organizing presidential inaugurations, and "other unknown oath administrators" whom might be asked to conduct oaths and prayers at future inaugurations.  *Id*. at 1006–07, 1010.  The Court rejected the plaintiff's claim as not redressable because it had no authority to enjoin the conduct of all of those unnamed individuals who might, during some future inauguration ceremony, wish to utter the phrase "so help me God."  *Id*. at 1010-12 (noting that the plaintiffs were essentially seeking an "injunction against the world").  The Court reasoned that the relief requested would not prevent the claimed injury because the named defendants possessed no authority to decide whether future inaugural ceremonies would contain the phrase. *Id*. at 1011.  In the Court's view, such general relief is the purview of the legislature.  *Id*. at 1011.

Here, Plaintiffs similarly fail to satisfy the redressability requirement.  Plaintiffs complain—without naming any particular defendant—that the ASMFC's action in conjunction with the other federal law affecting the ASMFC violates the "Anti-Coercion Doctrine" and the

"Compacts Clause," of the United States Constitution.  (Compl. ¶¶ 56–66).  Plaintiffs further complain that all defendants (including the Georgia and South Carolina Defendants) violated the Fifth and Fourteenth Amendment "Takings Clause," and the Civil Rights Act of 1971 for performing the alleged damaging actions under color of law and depriving Plaintiffs of their property, etc.  (Compl. ¶¶ 67–74).[9]  Plaintiffs request relief by way of a permanent injunction setting aside Addendum II (Compl. at 27), which can be given no effect against Defendants.

Defendants do not collectively, independently, or individually possess any authority to promulgate or implement FMPs or the remedies sought by the Plaintiffs.  As mentioned, each ASMFC member state appoints three representatives, and the ASMFC acts by a majority vote of the member states.  77 P.L. 539, art. IV.  Under ASMFC regulations, the vote of each state is determined by the majority of the state's commissioners who are present.  (Ex. F, art. III, § 2).[10]

Accordingly, it is the ASMFC as a body that has the authority to act.  Defendants have no power to undo or correct any action taken by the ASMFC.  Therefore, any relief issued against the Georgia and South Carolina Defendants named in this action could not possibly remedy Plaintiffs' injuries.

Finally, regardless of the remedy, Georgia and South Carolina's fishing regulations with respect to Atlantic Striped Bass would be unaffected, because Georgia and South Carolina are not bound by Addendum II.  (Ex. B at 1.)  Even for sake of argument, if Georgia and South Carolina were bound by Addendum II, Plaintiffs have failed to show that Georgia or South

---

[9] Again, Plaintiffs do not assert Counts I and II against Defendants, and Defendants are not even arguably a party to Count V (which is specific to Maryland).

[10] The Rules and Regulations of the ASMFC are attached hereto as <u>Exhibit F</u> and are incorporated herein.

Carolina's fishing regulations have changed based on Addendum II, or that Georgia and South Carolina would rescind their regulations in accordance with Addendum II. *See Delmarva*, 127 F.4th at 513–14; *supra* at n.5; Appx.[11]

Because Plaintiffs have failed to show that their injuries are fairly traceable to any conduct of Defendants, or that their injuries are redressable through the relief they seek, Plaintiffs lack Article III standing to bring this action against Defendants, and this Court lacks subject matter jurisdiction to adjudicate this case. Pursuant to Fed. R. Civ. P. 12(b)(1), the Complaint must be dismissed against Defendants.

**B.    Plaintiffs' claims against Defendants are meritless.**

When claims are insubstantial, frivolous, and without merit, they may be dismissed on grounds the Court lacks subject matter jurisdiction to adjudicate the claims. Plaintiffs name Defendants presumably to increase the odds that some of their claims will survive, but there is no factual or legal basis to name Defendants in this action. As such, this Court lacks jurisdiction to adjudicate any claims against Defendants.

A complaint may be dismissed under 12(b)(1) if it is "wholly insubstantial and frivolous," or "so patently without merit as to justify the court's dismissal for want to jurisdiction." *FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004) (quoting *Bell v. Hood*, 327 U.S. 678, 681 (1946)); *see also Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 133, n.1 (D.C. Cir. 2017) (Brown, J. concurring) (courts lack subject matter jurisdiction when the claim "clearly appears to be immaterial and made solely for

---

[11] Appended to this Memorandum is a list of Georgia and South Carolina's Atlantic Striped Bass Regulations. The <u>Appendix</u> is incorporated herein by reference.

the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous….") (citation omitted).

Plaintiffs name no particular defendant in Counts I and II, and indiscriminately name all defendants in Counts III and IV—Maryland being the only party named in Count V. (Compl. ¶¶ 56–78). There are no allegations that connect Defendants to this case, save the inference perhaps that they are appropriate parties because Georgia and South Carolina are members of the Compact. Without more (much more), Plaintiffs fail to assert a claim with any merit against Defendants. Further, the overwhelming evidence is to the contrary. Neither Georgia nor South Carolina have stock of migratory Atlantic Striped Bass to which Addendum II applies (Ex. B at 1; Ex. D ¶ 9; Ex. E ¶ 8); neither have a seat on the Striped Bass Board (Ex. A at 2); neither voted for or against Addendum II (Ex. C at 60); and neither have the power individually or collectively to redress Plaintiffs' alleged injury. *See supra* at 13.

It is clear from the face of the Complaint that Plaintiffs' dispute is not with Defendants at all. Plaintiffs have no meritorious claims against Defendants and the claims asserted against Defendants are wholly insubstantial and frivolous. As such, the Court lacks subject matter jurisdiction over all claims asserted against Defendants and pursuant to Fed. R. Civ. P 12(b)(1), the Complaint must be dismissed.

**C.    Defendants are immune from suit under the Eleventh Amendment.**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. It is well-established that this bar to suit in federal court applies not only to actions brought by citizens of another state, but also to those brought by citizens of the

state involved. *See Hans v. Louisiana,* 134 U.S. 1, 10 (1890). The Eleventh Amendment confirms that each state is a sovereign entity and that "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without [the state's] consent." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996) (internal quotations and citations omitted).

Applying the Eleventh Amendment, the Supreme Court has long held that "[t]his express constitutional limitation denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464 (1945) (citations omitted) (overruled in part on other grounds in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)). As the Supreme Court discussed at length in *Alden v. Maine*, the doctrine of state sovereign immunity from suit in federal court derives from the Constitutional plan itself, where the early Constitutional allocation of power between the central government and the states was limited by the Tenth Amendment reservation of rights to the states, as furthered and embodied in the Eleventh Amendment provision that federal jurisdiction would not extend to suits in federal court against one of the United States. 527 U.S. 706, 714–27 (1999).

As a general rule, a suit against state agencies or state officials in their official capacity is treated as a suit against the state itself. *See Marshall v. Labor & Indus.*, 89 F. Supp. 2d 4, 11 (D.D.C. 2000) ("Immunity under the Eleventh Amendment extends to state agencies.") (citing *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986)); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (an "official capacity" suit is a suit against the state official's office and therefore "no different from a suit

16

against the state itself.").

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted); *see also Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 101 (1984). As such, the immunities possessed by the state are also possessed by a state official named in an official capacity. *See Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 167) Where no state is named as a defendant, but a state official is instead named in his or her official capacity, Eleventh Amendment sovereign immunity applies to bar the suit against the state official when the state is the "real, substantial party in interest." *Pennhurst State School*, 465 U.S. at 101 (citing *Ford Motor Co.*, 323 U.S. at 464). This immunity applies "regardless of whether [the suit] seeks damages or injunctive relief." *Id*. at 102.

The doctrine of sovereign immunity, therefore, whether against a state agency or agency head in their official capacity, bars a court's assertion of federal jurisdiction in suits by citizens of a state against their state, unless the state has consented to be sued or has unequivocally waived or abrogated its immunity. *Seminole Tribe*, 517 U.S. at 72–77. With this, there are only three conditions consistent with Eleventh Amendment immunity under which the federal judiciary may exercise jurisdiction in suits against a state or a state official in his or her official capacity: (1) when the state has consented to be sued in federal court on the claim involved, (2) when the state has waived sovereign immunity, or (3) when Congress has specifically abrogated the state's grant of sovereign immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 253 (1985); *see also Barbour v. Wash. Metro Area Transit Auth.*, 374 F.3d 1161, 1163 (D.C. Cir. 2004). None of these exceptions to state sovereign immunity are present here.

**1.    Defendants have not consented to be sued in federal court, nor have they waived sovereign immunity.**

Absent consent, or an express waiver to be sued, the Eleventh Amendment generally prohibits federal courts from entertaining a suit brought by private parties against a state or its representative agencies. *Pennhurst State Sch.*, 465 U.S. at 97–99.

A state's "decision to waive [sovereign] immunity . . . is altogether voluntary on the part of the sovereignty . . .  [and, accordingly, the] test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Sav. Bank v. Florida Prepaid Post-Secondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (barring claim against Florida under the Trademark Remedy Clarification Act because Florida had neither "unequivocally" waived immunity nor consented to suit).

As such, the state's decision "to shed the protective mantle" of Eleventh Amendment immunity must be through a "specific authority conferred by an enactment of the legislature," *Alden*, 527 U.S. at 757–58 (citation omitted) and must be "unequivocally expressed." *Pennhurst State School*, 465 U.S. at 99 (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

Here, neither Georgia nor South Carolina have consented to be sued in federal court, nor have they waived their Eleventh Amendment immunity as to any of the claims involved in this action.  Plaintiffs make no allegations to the contrary and point to no authority, statutory or otherwise, establishing either consent or waiver.  (*See generally,* Compl.).  Therefore, Defendants have not consented to being sued nor have they voluntarily waived immunity, and this matter thus is barred by Eleventh Amendment immunity.

**2.    Congress has not abrogated Eleventh Amendment immunity with respect to Plaintiffs' claims.**

Since Defendants have neither waived their Eleventh Amendment immunity nor

consented to be sued in federal court, Plaintiffs must establish that Congress has somehow abrogated Eleventh Amendment immunity with respect to their claims. *See Pennhurst State School*, 465 U.S. at 99. Congressional intent to abrogate a state's sovereign immunity, however, must be "unequivocally expressed" within "a clear legislative statement" in a statute enacted pursuant to Section 5 of the Fourteenth Amendment. *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001); *Florida Prepaid Post-Secondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 635 (1999); *Seminole Tribe*, 517 U.S. at 55–56. Congressional intent to abrogate Eleventh Amendment immunity must be "unmistakably clear," *Dellmuth v. Muth*, 491 U.S. 223, 232 (1989), and the language must be written "*in the statute itself.*" *Atascadero State Hosp.*, 473 U.S. at 254 (Brennan, J., dissenting, but citing the majority's decision) (emphasis in original) (citation omitted); *see also Florida Prepaid Post-Secondary Educ. Expense Bd.*, 527 U.S. at 635 (Congressional intent to abrogate must be "unmistakably clear in the language of the statute") (citation omitted).

Here, Plaintiffs have not pointed to—nor can they—any "unmistakably clear" language, or any language at all, in the Compact, the Fisheries Act, the Magnuson-Stevens Act, or any other law or constitutional provision that abrogates Defendants' Eleventh Amendment immunity to the claims in the Complaint.

Based on the foregoing, Plaintiffs have failed to show that Defendants have waived their sovereign immunity pursuant to the Eleventh Amendment, consented to suit, or that Congress abrogated that immunity. As such, this Court lacks subject matter jurisdiction over Defendants, and Plaintiffs Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

II.    **Plaintiffs have failed to state any claim against Defendants upon which relief can be granted, and the Complaint must be dismissed as to Defendants pursuant to Fed. R. Civ. P. 12(b)(6).**

Even if this Court has subject matter jurisdiction over Plaintiffs' claims and the Defendants do not have Eleventh Amendment immunity, the Court should still dismiss the Complaint for failure to state a claim supporting relief against the Defendants.

Rule 12(b)(6) allows this Court to dismiss a complaint that "fail[s] to state a claim upon which relief may be granted." *Covey Run, LLC v. Wash. Capital, LLC*, 245 F. Supp. 3d 9, 14 (D.D.C. 2017). A complaint will be dismissed under Rule 12(b)(6) unless it contains "significant factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" where the plaintiff has pleaded facts sufficient to allow the court to reasonably infer that the defendant is liable. *Id.* Plaintiffs may not survive Rule 12(b)(6) through mere "labels and conclusions, [or] formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 55. "Moreover, the court 'need not accept inferences drawn by plaintiff [ ] if such inferences are unsupported by the facts set out in the complaint.'" *Martha's Vineyard/Dukes County Fishermen's Ass'n v. Locke*, 811 F. Supp. 2d 302, 305-06 (D.D.C. 2011) (citing *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

When ruling on a 12(b)(6) motion, a court may only consider the facts alleged in the complaint, documents attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.

1996)).[12]  Further, on a 12(b)(6) motion, the plaintiff's factual allegations must be taken as true, and all inferences must be drawn in the plaintiff's favor.  *Id.* (citations omitted).  "A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it either 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)).

The Court need not look beyond the four corners of Plaintiffs' Complaint to find deficiencies warranting dismissal.  Plaintiffs have alleged generic violations of the U.S. Constitution by all defendants, including Georgia and South Carolina, to support their requested relief of a permanent injunction setting aside Addendum II, interest, and attorneys' fees. (Compl. ¶¶ 56–74; Compl. at Requested Relief).  While some of Plaintiffs' allegations are directed at all defendants, Plaintiffs fail to allege any facts that state a plausible claim against the Georgia or South Carolina Defendants.  (*See generally* Compl.).

Defendants are not parties to Counts I, II, and V of Plaintiffs' Complaint.  (Compl. ¶¶ 56–66, 75–78).  Count I asserts a violation of the Tenth Amendment.  (Compl. ¶¶ 56–60). However, Count I does not lodge the alleged violation of the Tenth Amendment against the Defendants or any other defendant in this action.  *Id.*  To assert a Tenth Amendment claim, Plaintiffs were required to "assert injury from governmental action taken in excess of the authority that federalism defines." *Bond v. United States*, 564 U.S. 211, 220 (2011).  Plaintiffs fall well short of this pleading standard, only asserting that Congress exceeded its Constitutional authority "by delegating an Interstate Compact the authority" to adopt and implement FMPs.

---

[12] This stands in contrast to a court's ability to consider elements beyond the four corners of a complaint when ruling on a 12(b)(1) motion. *See supra* at 8.

(Compl. ¶ 58).  Count II suffers from the same deficiency.  (Compl. ¶¶ 61–66).  Nowhere in

Count II do Plaintiffs lodge the claim against the Defendants.  *See e.g. Giles v. Med. Contrs.*

*CMS*, 680 F. Supp. 2d 633, 636 (D. Del. 2010) (Plaintiff's claim failed to meet the pleading

requirements of *Iqbal* and *Twombly* because, among other reasons, the facts were not directed

toward the moving defendants).  Regarding Count V, which is specifically lodged against the

State of Maryland, it is axiomatic that the Defendants are not subject to the Maryland

Constitution.  (Compl. ¶¶ 75–78); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

293 (1980).

Count III of Plaintiffs' Complaint is charged to all defendants but nevertheless fails to

state a valid claim against the Defendants.  (Compl. ¶¶ 71–74).  Since the Court may consider

matters of which it can take judicial notice, it should take judicial notice of the ASMFC's

meeting minutes as matters of public record.  *See Hurd*, 864 F.3d at 686; (Exs. A, C).  The

ASMFC's minutes unequivocally show that the Georgia and South Carolina Defendants do not

sit on the ASMFC's Striped Bass Board and did not participate in the vote ratifying Addendum

II.  (Ex. A at 2; Ex. C at 60).  Thus, none of Plaintiffs' claims raise allegations against the

Defendants' conduct.   The ASMFC is a regulatory body created by Congress that operates

wholly separate from its member states.  (*See generally* Ex. A); 16 U.S.C. §§ 5104–08.

Congress vested the ASMFC with the power to prepare and adopt FMPs for fishery resources in

Atlantic state waters, including stocks of Atlantic Striped Bass.  16 U.S.C. § 5104(a).  While

Georgia and South Carolina maintain voluntary membership to the ASMFC, the ASMFC itself is

the regulatory body which adopted and implemented Addendum II.  *Id*.  Moreover, the

Defendants are not even members of the ASMFC in their own right.  Rather, the Defendants are

the emissaries of the member States of Georgia and South Carolina.  77 P.L. 539, art. II, art. III.

As explained *supra*, the Defendants have no authority in their own right to adopt and implement Addendum II, much less afford the relief sought by Plaintiffs. *See supra* at 12–14; *Iqbal*, 556 U.S. at 678. Plaintiffs cannot provide further factual enhancement to their claims against the Defendants beyond Defendants' membership in the ASMFC. *Iqbal*, 556 U.S. at 678.

Mere membership without participation in the alleged unlawful actions cannot lead to a reasonable inference that the Defendants are liable for the alleged misconduct of adopting Addendum II. *Id*. Plaintiffs' claims therefore lack facial plausibility. *Id*. Instead, Plaintiffs infer that the Defendants are liable for the alleged injuries incurred by the adoption of Addendum II purely via their membership in the ASMFC. (*See generally* Compl.). Such inferences are insufficient to sustain a claim for relief against the Defendants. *Martha's Vineyard*, 811 F. Supp. 2d at 305–06.

In Count IV, Plaintiffs allege a violation of 42 U.S.C. § 1983 against all defendants generally, including the Georgia and South Carolina Defendants. (Compl. ¶¶ 71–74). Plaintiffs claim that the "actions of the Defendants" deprived Plaintiffs of their rights to property and livelihood, without expounding further. (Compl. ¶ 72); *Iqbal*, 556 U.S. at 678; *Martha's Vineyard*, 811 F. Supp. 2d at 305–06. Under 42 U.S.C. § 1983, any *person* who, under color of authority, deprives another person of any Constitutional rights, privileges, or immunities, shall be liable to the injured party. However, States and State officials are not "persons" within the meaning of § 1983. While State officials are indeed "persons" in the literal sense, the U.S. Supreme Court has recognized that a suit against a State official in his or her official capacity is a suit against the State official's office rather than the person. *Will*, 491 U.S. at 71. To that end, Congress did not intend for § 1983 to provide a forum for litigants to seek remedies against States and their officials for alleged deprivation of civil liberties. *Id*. at 66. To do so would

23

deprive States of their Eleventh Amendment immunity, which they retain absent an express

waiver. *Id*.; *see supra* at 15–19. Neither Georgia nor South Carolina have waived their Eleventh

Amendment immunity in this case. Therefore, Plaintiffs' claim in Count IV fails.

The facts alleged by Plaintiffs, accepted as true and read in the light most favorable to

Plaintiffs, are devoid of any justiciable claims against the Defendants. The Court should

therefore dismiss Plaintiffs' claims against the Defendants.

III.     **The Court lacks personal jurisdiction over the Georgia Defendants because Plaintiffs have insufficiently served process on the Georgia defendants and Plaintiffs' Complaint thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).**

In addition to the multitude of deficiencies in their Complaint, Plaintiffs have failed to

sufficiently serve process on the Georgia Defendants.[13] The Court therefore lacks personal

jurisdiction over the Georgia Defendants and must dismiss Plaintiffs' Complaint as to them.

Federal Rule of Civil Procedure 4(c) requires a plaintiff to serve a summons and a copy

of the complaint upon a defendant by a person who is at least eighteen years of age and not a

party to the action. When service is upon a State or State-created governmental organization, the

plaintiff must either deliver a copy of the summons and complaint to the State or State-created

governmental organization's chief executive officer or in the manner prescribed by the State's

law. Fed. R. Civ. P. 4(j)(2). The State of Georgia's process requirements mirror those of the

federal rule. O.C.G.A. § 9-11-4(c); *see Madden v. Cleland*, 105 F.R.D. 520, 523 (N.D. Ga.

1985) (Georgia law has no provisions for service by mail). Both the federal rule and Georgia

---

[13] The South Carolina Defendants do not join the Georgia Defendants in their Fed. R. Civ. P. 12(b)(5) defense, but nothing herein should be construed as a limitation on the defenses available to the South Carolina Defendants or that any of Plaintiffs' claims are valid as to the South Carolina Defendants. South Carolina Defendants do, however, join in the Fed. R. Civ. P. 4(m) defense asserted below.

law permit a plaintiff to request a waiver of formal service of process by the defendant. Fed. R. Civ. P. 4(d); O.C.G.A. § 9-11-4(d).

If a plaintiff fails to serve a defendant within 90 days after filing the complaint, the court must dismiss the action against the defendant or order that service be made within a specified time. Fed. R. Civ. P. 4(m); *Morrisey v. Mayorkas*, 17 F.4th 1150, 1154 (D.D.C. 2021). If the plaintiff can show good cause for its failure to serve process on the defendant, the court must extend time for service for an appropriate period. *Id*. A defendant may also file a motion to dismiss on its own merit for insufficient service of process by the plaintiff. Fed. R. Civ. P. 12(b)(5).

Defendant Georgia Department of Natural Resources is an agency created by the State of Georgia. O.C.G.A. § 12-2-1(a). As commissioner, Defendant Walter Rabon is the executive vested with the authority to manage the Georgia Department of Natural Resources. O.C.G.A. § 12-2-1(b).

Plaintiffs filed their Complaint against the Georgia Defendants on May 13, 2025. (Compl. at 1). The Georgia Defendants received a copy of the Complaint and Summons by mail on June 4, 2025. Plaintiffs never formally served process on either of the Georgia Defendants as prescribed in the federal rules or Georgia law. *See Madden*, 105 F.R.D. at 523. Neither did Plaintiffs request a formal waiver of service by the Georgia Defendants. Further, pursuant to Federal Rule of Civil Procedure 4(m), Plaintiffs were required to file proofs of service on or before August 11, 2025. *Morrisey*, 17 F.4th at 1154. Plaintiffs failed to do so as to both the Georgia and South Carolina Defendants. In the absence of sufficient process, Plaintiffs have failed to provide the Court with any reason, much less a good reason, for their failure to properly serve the Georgia Defendants or their failure to file proofs of service. In any event, Plaintiffs'

25

time to explain their failures has come and gone. This action has been pending in this Court for approximately four months, the duration of which Plaintiffs have not sufficiently served the Georgia Defendants and many other defendants in this action. *Id*. These failures by Plaintiffs to effectuate proper service and to file proofs of service requires dismissal under Federal Rules of Civil Procedure 4(m) and 12(b)(5).

Plaintiffs' suit against Defendants fails at every juncture. Their lack of standing coupled with Defendants' Eleventh Amendment immunity bars this Court from hearing this case against Defendants. Beyond that, Plaintiffs have failed to state any plausible claim against Defendants. And beyond even that, Plaintiffs have not properly served the Georgia Defendants and failed to file proof of service for the Georgia and South Carolina Defendants. For these reasons, the Court should dismiss Plaintiffs' Complaint against Defendants.

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

In accordance with this Court's September 10, 2025, Minute Order at Docket Entry 29, Georgia and South Carolina Defendants—in addition to their Joint Motion to Dismiss—respectfully request this Court DENY Plaintiffs' Motion for Preliminary Injunction, showing the Court the following:

On September 5, 2025, nearly four months after Plaintiffs filed their Complaint, they filed their Motion for Preliminary Injunction, asking this Court to issue a preliminary injunction and preserve a 2024 *status quo* prior to the ASMFC's adoption of Addendum II. *See supra* at 5–7.[14] Plaintiffs' Memorandum of Law in Support of said Motion ("Pls.' Preliminary Injunction

---

[14] In this Joint Response to Plaintiffs' Motion for Preliminary Injunction, Defendants reincorporate by reference and reassert all background, facts, and arguments from the within and foregoing Memorandum in Support of their Joint Motion to Dismiss.

Motion") is a veiled attempt to brief the Court on the merits of the underlying case during its pleadings stage, and to relitigate the *Delmarva* case (*see supra* at 5–6). If this delay and attempted sleight-of-hand were not enough to deny Plaintiffs' Motion, Plaintiffs still fail to demonstrate grounds for a preliminary injunction.

"A preliminary injunction is an *extraordinary remedy* that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (emphasis added) (quotations omitted). The plaintiff must establish (1) likelihood of success on the merits; (2) likelihood that he will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities is in favor of plaintiff; and (4) that the injunction is in the public interest. *Id.* (citations omitted). The movant has the burden to show that "all four factors, taken together, weigh in favor of the injunction." *Id.* (citing *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

There is a high standard for irreparable injury and such injuries "must be both certain and great." *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a preliminary injunction are not enough." *Id.* (internal quotations and citation omitted). If the moving party fails to show either likelihood of success on the merits, or irreparable harm, the Court need not even look at the other factors and may refuse to issue a preliminary injunction. *Id.* at 1236 (citations omitted); *see also id.* at n.3.

It is unclear from Pls.' Preliminary Injunction Motion whether they seek to enjoin just the ASMFC, particular defendants, or all defendants. For purposes of this Response, Defendants assume that Plaintiffs ask for general injunctive relief against all defendants named in the

Complaint.  As such, Defendants first remind the Court that neither Georgia nor South Carolina are bound by Addendum II, nor did they vote on Addendum II, and neither have the power, jointly or individually, to give effect to the injunction the Plaintiffs seek.  *See supra* at 6–7.

Next, rather than restating Defendants' entire argument above on their Joint Motion to Dismiss, Defendants simply argue that, for all the reasons stated hereinabove, Plaintiffs have failed to show a likelihood of success on the merits.  This Court does not have subject matter jurisdiction to adjudicate this case as Plaintiffs lack standing (*see supra* at 9–14); Plaintiffs' claims are meritless (*see supra* at 14–15); and Defendants are immune from suit under the Eleventh Amendment (*see supra* at 15–19).  Further, Plaintiffs have failed to state any claims upon which relief may be granted, and the underlying case must be dismissed.  *See supra* at 20–24.  For these reasons, Plaintiffs cannot succeed on the merits.

Finally, Plaintiffs have failed to demonstrate the high standard for irreparable injury necessary for a preliminary injunction.  Plaintiffs essentially state that foregone revenues from cancelled charter bookings and devaluation of vessels serving as collateral for loans is irreparable harm.  (Pls.' Memo at 23–24).  Plaintiffs' claims are speculative, and mere monetary injury is not sufficient to demonstrate irreparable harm.  *See Clevinger*, 134 F.4th at 1234.  This—coupled with the fact that Plaintiffs have waited *four months* to move for injunctive relief—shows Plaintiffs clearly cannot demonstrate irreparable injury to the extent necessary to justify a preliminary injunction.

Accordingly, since Plaintiffs cannot satisfy either of the first two factors to support a preliminary injunction, the Court need go no further in its analysis, *Clevinger*, 134 F.4th at 1236, and Plaintiffs' Motion for Preliminary Injunction should be DENIED.

**CONCLUSION**

For the foregoing reasons, Defendants' Joint Motion To Dismiss should be GRANTED,

and Plaintiffs' Motion for Preliminary Injunction should be DENIED.

Respectfully Submitted,

| | |
|---|---|
| Christopher M. Carr<br>Georgia Bar No. 112505<br>*Attorney General*<br><br>Robin J. Leigh<br>Georgia Bar No. 445845<br>*Deputy Attorney General*<br><br>*/s/ D. Garrett White*<br>D. Garrett White<br>Georgia Bar No. 631112<br>*Assistant Attorney General*<br><br>*/s/ Griffin W. Ingraham*<br>Griffin W. Ingraham<br>Georgia Bar No. 773148<br>*Assistant Attorney General*<br><br>Office of the Attorney General<br>40 Capitol Square, S.W.<br>Atlanta, Georgia 30334<br>(404) 692-5105<br>gwhite@law.ga.gov<br>(404) 458-3260<br>gingraham@law.ga.gov<br><br>*Counsel for Defendants Walter Rabon in his*<br>*official capacity as Commissioner of the*<br>*Georgia Department of Natural Resources,*<br>*and the Georgia Department of Natural*<br>*Resources* | */s/ Susan O. Porter*<br>Susan O. Porter<br>South Carolina Bar No. 68335<br>General Counsel<br><br>South Carolina Department of Natural<br>Resources<br>260 D. Epting Lane<br>West Columbia, South Carolina 29172<br>(803)734-3246<br>porters@dnr.sc.gov<br><br>*Counsel for Defendants Thomas S. Mullikin,*<br>*Ph.D., J.D. in his official capacity as Director*<br>*of the South Carolina Department of Natural*<br>*Resources, and the South Carolina Department*<br>*of Natural Resources* |

Dated: September 24, 2025

## APPENDIX

**Georgia**

The possession and size limits for striped bass in "salt water as defined in O.C.G.A. § 27-4-1 [are] two (2) [fish]…each of which must be twenty-two (22) inches or longer." Ga. Comp. R. & Regs. r. 391-4-3-.05. There is no season on striped bass in salt water in Georgia. *See generally*, Ga. R. & Regs. Chapters 391-2, 4. For a table of regulations applicable to other Georgia saltwater fish species including the striped bass please visit https://www.eregulations.com/georgia/fishing/finfish-seasons-limits-sizes.

**South Carolina**

In South Carolina, the regulation of saltwater fisheries, including the implementation of fishery management plans adopted by the Atlantic States Marine Fisheries Commission (ASMFC), is exercised exclusively through legislative action. See S.C. Code § 50-5-30, which provides that "[t]he department may promulgate regulations for the government of the force under its control and for the control of fisheries, not contrary to or inconsistent with the laws and policy of the State, having the force and effect of law." This provision has been in effect since 1962 and was last amended in 2000.

South Carolina has enacted several statutes specifically governing the striped bass fishery. S.C. Code § 50-5-1556 regulates the locations, seasons, and harvest limits for striped bass in inshore waters and the territorial sea, excluding the Savannah River from the saltwater–freshwater dividing line downstream to its mouth. As last amended in 2018, the statute prohibits possession of any striped bass from June 16 through September 30, and from October 1 through June 15 limits possession to no more than three fish per day, requires a minimum size of twenty-six inches, and mandates that all fish be landed with the head and tail fin intact. S.C. Code § 50-

30

13-210 establishes a daily possession limit of no more than ten hybrid bass, striped bass, or a combination thereof, and was most recently amended in 2022. S.C. Code § 50-13-230 further restricts the take of striped and hybrid bass by date and location and was amended in 2024 to explicitly include hybrid bass within its provisions.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of September, 2025, a copy of this Memorandum in Support of the Defendants' Joint Motion to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction was filed electronically. Electronic notice of this filing will be sent to all counsel of record through the CM/ECF system.

| | |
|---|---|
| Christopher M. Carr<br>Georgia Bar No. 112505<br>*Attorney General*<br><br>Robin J. Leigh<br>Georgia Bar No. 445845<br>*Deputy Attorney General*<br><br>*/s/ D. Garrett White*<br>D. Garrett White<br>Georgia Bar No. 631112<br>*Assistant Attorney General*<br><br>*/s/ Griffin W. Ingraham*<br>Griffin W. Ingraham<br>Georgia Bar No. 773148<br>*Assistant Attorney General*<br><br>Office of the Attorney General<br>40 Capitol Square, S.W.<br>Atlanta, Georgia 30334<br>(404) 692-5105<br>gwhite@law.ga.gov<br>(404) 458-3260<br>gingraham@law.ga.gov<br><br>*Counsel for Defendants Walter Rabon in his official capacity as Commissioner of the Georgia Department of Natural Resources, and the Georgia Department of Natural Resources* | */s/ Susan O. Porter*<br>Susan O. Porter<br>South Carolina Bar No. 68335<br>General Counsel<br><br>South Carolina Department of Natural Resources<br>260 D. Epting Lane<br>West Columbia, South Carolina 29172<br>(803)734-3246<br>porters@dnr.sc.gov<br><br>*Counsel for Defendants Thomas S. Mullikin, Ph.D., J.D. in his official capacity as Director of the South Carolina Department of Natural Resources, and the South Carolina Department of Natural Resources* |